[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 1025 
¶ 1. Mitchell Shane Hendrix was convicted by a Lee County Circuit Court jury of two counts of taking a motor vehicle and two counts of felony malicious mischief. Hendrix raises the following issues on appeal which we quote verbatim:
 I. Insufficient evidence exists to support the verdicts of the jury because of the improbable, unreasonable, contradictory, and substantially impeached testimony of the accomplices.
 II. The verdicts of the jury are against the weight of the evidence because of the improbable, unreasonable, contradictory, and substantially impeached testimony of the accomplices.
 III. The jury was erroneously instructed regarding how it should consider the unsupported testimony of accomplices.
 IV. Insufficient evidence exists to support the verdicts of the jury because the State failed to identify with sufficient specificity the vehicles involved.
 V. Discovery violations prejudiced the defense such that a mistrial should have been granted.
 VI. A prior consistent statement was admitted erroneously, improperly bolstering the testimony of James Keith Hendrix.
Finding no error, we affirm.
 FACTS ¶ 2. On April 9, 2004, Hendrix, Christopher Cruz Coker (Coker), and James Keith Hendrix (Keith) had spent a majority of the day riding around Lee County drinking liquor. At some point, the trio decided to end the night with a bang by taking school buses from Mooreville High School for the purpose of playing demolition derby. A total of four buses were taken from the school and driven to State Park Road. Two of the buses were damaged in the game of demolition derby while two other buses were spared because they could not make it up the terrain. During these events, Keith crashed Hendrix's mother's car into a light pole, causing nearby homes to experience an electrical outage. Authorities found Keith walking down the road and picked him up for public drunkenness.
 ¶ 3. Lieutenant Scott Reedy, chief investigator for the Lee County Sheriff's Department, was assigned to investigate the case of the damaged school buses. On April 10, Reedy was informed that Keith had been arrested for public drunkenness near the area where the buses were found. Reedy set up an interview with Keith to see if he knew anything about the incident involving the buses. In that interview, Keith implicated Hendrix and Coker.
 ¶ 4. On July 15, 2004, Hendrix and Coker were jointly indicted on two counts of feloniously taking Lee County School District buses. That same day, a Lee County grand jury issued a second joint indictment charging Hendrix and Coker with two counts of felony malicious mischief. The two cases were subsequently consolidated. Four days prior to the commencement of Hendrix and Coker's trial, Coker was meeting with his attorney to prepare for trial when Coker was arrested on two counts of strong armed robbery. Coker then decided to enter a guilty plea on all of his outstanding charges. He also agreed to testify for the State in hopes of receiving a lenient sentence. *Page 1027 
 ¶ 5. Hendrix's trial commenced on August 29, 2005. Both Keith and Coker testified for the State, each giving varying accounts of the events of April 9, 2004. Keith testified as follows: Hendrix and Coker picked Keith up on the morning of April 9 in Hendrix's mother's car. Keith drove most of the day as the trio traversed Lee County drinking liquor. Later that night, Hendrix and Coker asked Keith to drive them to Mooreville High School for the purpose of obtaining school buses to play demolition derby. Keith drove them to the school and let them out. Shortly thereafter, two school buses emerged from the school's parking lot. Keith planned to follow the buses to a location off of State Park Road. However, after entering State Park Road one of the buses hit a stop sign which flew toward the vehicle Keith was driving causing him to crash into a light pole. Keith claimed neither of the buses stopped, and that was the last time he saw Hendrix and Coker.
 ¶ 6. Coker testified that on April 9 Hendrix and Keith picked him up at approximately 1:00 p.m. to ride around and drink liquor. He claimed that it was Keith's idea to take the buses, and at 10:00 or 11:00 p.m. they went to Mooreville High School. Coker knew that the keys to the buses were left in the ignition because he once cleaned the buses when he was in high school. Coker claims that they took four buses from the school. He testified that he and Hendrix each drove two buses from the school that night. However, he also testified that Keith drove one of the buses from the school. In any event, Coker claimed that the three took turns crashing the buses after arriving at their final destination. Keith and Coker's testimony was the only evidence offered by the State to link Hendrix to the crimes for which he was indicted.
 ANALYSIS I. Insufficient evidence exists to support the verdicts of the jury because of the improbable, unreasonable, contradictory, and substantially impeached testimony of the accomplices.
 II. The verdicts of the jury are against the weight of the evidence because of the improbable, unreasonable, contradictory, and substantially impeached testimony of the accomplices.
 ¶ 7. This Court will reverse a conviction based on a challenge to the legal sufficiency of the evidence only where the evidence offered to prove one or more elements of the crime charged was such that a reasonable juror could only find the defendant not guilty. Wilson v. State, 936 So.2d 357,363 (¶ 6) (Miss. 2006). A reversal based on a challenge to the weight of the evidence is warranted only when a verdict is so contrary to the evidence presented that allowing it to stand would sanction an unconscionable injustice. Id. When reviewing challenges to the weight and sufficiency of the evidence, the Court must view the evidence in the light most favorable to the State and which is consistent with the verdict. Id.
 ¶ 8. Testimony of an accomplice, even when uncorroborated, can be sufficient to support a verdict of guilt. Catchingsv. State, 394 So.2d 869, 870 (Miss. 1981). However, "where [accomplice testimony] is uncorroborated, it must also be reasonable, not improbable, self-contradictory or substantially impeached." Jones v. State, 740 So.2d 904, 910 (¶ 17) (Miss. 1999) (quoting Jones v. State,368 So.2d 1265, 1267 (Miss. 1979)). Hendrix first asserts that Keith and Coker's testimony was uncorroborated because accomplice testimony cannot corroborate another accomplice's *Page 1028 
testimony. Next, he urges this Court to find that both accomplices' testimony was so unreasonable, improbable, contradictory, and substantially impeached as to render the State's case legally insufficient and the verdict against the overwhelming weight of the evidence.
 ¶ 9. It is true that the only evidence linking Hendrix to the crimes charged was the testimony of Coker, an admitted accomplice, and Keith, an unindicted but presumed accomplice. No Mississippi case law exists to support Hendrix's assertion that one accomplice cannot corroborate the testimony of another accomplice. Moreover, a finding that the accomplice testimony was uncorroborated would only be important if Keith and Coker's testimony was as unreasonable, improbable, and contradictory as Hendrix claims. Although there are discrepancies in each accomplice's account of the scheme, those discrepancies relate to the level of Keith's involvement rather than Hendrix's. Both accomplices testified that Hendrix drove at least one bus away from the school. Coker testified that Hendrix participated in crashing the two school buses. However, Keith claimed to have never made it to site of the demolition derby.
 ¶ 10. It is within the province of the jury, not this Court, to determine the weight and credibility to attach to each witness's testimony. Beyers v. State, 930 So.2d 456,458 (¶ 11) (Miss.Ct.App. 2006). The jury clearly believed the portions of Keith and Coker's testimony which implicated Hendrix in the crimes charged. We cannot say that a reasonable juror could only find Hendrix not guilty, or that the verdict represents an unconscionable injustice.
III. The jury was erroneously instructed regarding how it should consider the unsupported testimony of accomplices.
 ¶ 11. Hendrix offered the following instruction which was given as amended by the trial court:
 The testimony of an alleged accomplice, and the testimony of one who provides evidence against a defendant as an informer for pay or for immunity from punishment or for personal advantage or vindication, must always be examined and weighed by the jury with greater care and caution than the testimony of ordinary witnesses. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received either financially or as a result of being immunized from prosecution. You should keep in mind that such testimony is always to be received with caution and weighed with great care.[1]
Hendrix cites in his appellate brief to Mississippi case law that suggests that in some cases the word "suspicion" must be used in an accomplice instruction. However, Hendrix cannot attribute error to the trial court for an alleged error of his own creation. Alexander v. State, 811 So.2d 272,282 (¶ 26) (Miss.Ct.App. 2001) (citing Singleton v.State, 518 So.2d 653, 655 (Miss. 1988); Davis v.State, 472 So.2d 428 (Miss. 1985); Browning v.State, *Page 1029 450 So.2d 789 (Miss. 1984)). This issue is barred from review.
IV. Insufficient evidence exists to support the verdicts of the jury because the State failed to identify with sufficient specificity the vehicles involved.
 ¶ 12. Hendrix argues that the State listed the vehicle identification numbers of the buses taken from Mooreville High School in the indictment but failed to offer proof of the buses' vehicle identification numbers at trial. A verdict is legally sufficient if a reasonable juror could find that the State proved each element of the crime charged beyond a reasonable doubt. Wilson, 936 So.2d at 363 (¶ 16).
 ¶ 13. The statute prohibiting the unlawful taking of a motor vehicle proscribes:
 Any person who shall, willfully and without authority, take possession of or take away a motor vehicle belonging to another, and any person who knowingly shall aid and abet in such taking possession or taking away, shall be guilty of a felony and shall be punished by commitment to the Department of Corrections for not more than five (5) years.
Miss. Code Ann. § 97-17-42(1) (Rev. 2006). The State proved that the vehicles taken belonged to another through the testimony of the investigating officer who testified that the buses in question belonged to the Lee County Public Schools and by photographs introduced into evidence showing that the buses were those of Lee County Public Schools. The indictment listed the essential elements of the crime, and the inclusion of the vehicle identification numbers in the indictment was mere surplusage. This issue is without merit.
V. Discovery violations prejudiced the defense such that a mistrial should have been granted.
 ¶ 14. Lieutenant Reedy was asked by defense counsel during cross-examination what attempts he had made to obtain physical proof to link Hendrix to the crimes. Reedy responded that he had attempted to lift fingerprints from the school buses, but found only "bunches of little bitty smudges" rather than any prints with observable ridges. Reedy attempted to lift the prints by brushing a powdery substance over the examined area, adhering a piece of tape to the powdered area, and transferring what was pulled from the tape to a card for examination. When asked by defense counsel where the cards were, Reedy responded that he did not know but that they may have been left on the bus. Defense counsel subsequently, and outside the presence of the jury, requested a mistrial, citing the failure of the State to disclose evidence, which was denied by the trial court. On appeal, Hendrix argues that the State's failure to disclose the existence of the above referenced material was a discovery violation which prejudiced his defense.
 ¶ 15. A denial of a motion for mistrial is reviewed for abuse of discretion. Flora v. State, 925 So.2d 797,804 (¶ 5) (Miss. 2006). The State's suppression of favorable evidence violates a defendant's due process rights. Manningv. State, 929 So.2d 885, 890-91 (¶ 13) (Miss. 2006) (citing Brady v. Maryland, 373 U.S. 83, 87,83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)). This Court employs the following four-part test to determine whether a Brady violation, requiring a new trial, has occurred:
 The defendant must prove: (a) that the State possessed evidence favorable to the defendant (including impeachment evidence); (b) that the defendant does not possess the evidence nor could he obtain it himself with any reasonable diligence; (c) that the prosecution suppressed the favorable evidence; and (d) *Page 1030 
that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.
Id. at 891 (¶ 15) (citing Todd v. State,806 So.2d 1086, 1091-92 (¶ 15) (Miss. 2001)). If Reedy's testimony is taken as true, it is improbable that the fingerprint cards would have been favorable to the defendant or had an impact on the outcome of the trial.
 ¶ 16. Hendrix also argues that Reedy's loss or destruction of the cards requires reversal. The State is charged with a duty to preserve evidence "which might be expected to play a significant role in the suspect's defense." Cox v.State, 849 So.2d 1257, 1266 (¶ 24) (Miss. 2003) (quotingNorthup v. State, 793 So.2d 618, 623 (Miss. 2001)). Reviewing courts apply the following two-part test to determine whether spoliation of evidence requires reversal:
 First, it must be determined whether the evidence would have played a significant role in the defendant's case. To play a significant role, the exculpatory nature and value of the evidence must have been apparent before the evidence was lost. The second part of the test requires that the defendant have no way of obtaining comparable evidence by other means.
Id. at 1266 (¶ 25) (citing Tolbert v.State, 511 So.2d 1368, 1372 (Miss. 1987)). Although precedent refers to a two-part test, it appears that a third consideration is whether the officer acted in bad faith in failing to preserve the potentially exculpatory evidence.Id. at 1266 (¶ 27) (citing Wilson v. State,574 So.2d 1324, 1329 (Miss. 1990)). Reedy's testimony reveals that he clearly did not believe that the smudged fingerprints had any inculpatory or exculpatory value. Further, the record is wholly devoid of any evidence that Reedy acted in bad faith.
VI. A prior consistent statement was admitted erroneously, improperly bolstering the testimony of James Keith Hendrix.
 ¶ 17. In reviewing a claim that the trial court erroneously admitted evidence, this Court will not reverse unless the ruling resulted in a denial of a substantial right of the defendant.Hodges v. State, 912 So.2d 730, 757 (¶ 44) (Miss. 2005) (citing Jackson v. State, 645 So.2d 921,924 (Miss. 1994)).
 ¶ 18. During the defense's cross-examination of Keith, defense counsel referred to a statement which Keith gave Officer Reedy on April 12, 2004. In that statement Keith implicated Hendrix and Coker. Defense counsel then referred to an alleged discrepancy between that statement and Keith's testimony during Hendrix's May 7, 2004 bond hearing. Defense counsel asked Keith whether his current testimony was different than his May 7 testimony, to which Keith answered in the negative. Defense counsel then proceeded with a line of questioning which implied that Keith's original statement was not his own, but rather an account which may have been suggested by Reedy and adopted by Keith in order to escape prosecution.
 ¶ 19. On redirect the prosecutor asked Keith whether he gave the April 12 statement to Reedy in an exchange for a promise of non-prosecution or because the statement was the truth. Keith said the statement was true. The prosecutor first asked that the statement be marked for identification purposes. The prosecutor then asked Keith whether that was in fact the statement he gave Reedy, to which Keith answered in the affirmative. The prosecutor then offered the statement into *Page 1031 
evidence. Defense counsel objected stating that offering the prior statement was simply an attempt to bolster Keith's current testimony and noted that the prior statement was not inconsistent with the current testimony. The court accepted the statement into evidence.
Mississippi Rules of Evidence Rule 801(d)(1)(B) provides:
 A statement is not hearsay if . . . [t]he declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is . . . consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive. . . .
The Mississippi Supreme Court has stated the following regarding the applicability of the rule:
 Admission of a prior consistent statement of a witness where the veracity of the witness has been attacked is proper but should be received by the court with great caution and only for the purpose of rebuttal so as to enable the jury to make a correct appraisal of the credibility of the witness.
Caston v. State, 823 So.2d 473, 489 (¶ 43) (Miss. 2002) (quoting White v. State, 616 So.2d 304, 308
(Miss. 1993)). Defense counsel clearly attempted to impeach Keith by referring to alleged discrepancies between Keith's original statement to Reedy, his testimony at Hendrix's bond hearing, and his trial testimony. Defense counsel also attempted to show that Keith's trial testimony was the result of improper influence or motive, i.e. given in exchange for non-prosecution. Accordingly, we find that the trial court correctly allowed Keith's prior statement into evidence under Mississippi Rules of Evidence Rule 801(d)(1)(B) in order to rebut defense counsel's implied charge of fabrication.
 ¶ 20 THE JUDGMENT OF THE LEE COUNTY CIRCUIT COURT OFCONVICTION OF TWO COUNTS OF FELONIOUSLY TAKING A VEHICLE ANDSENTENCE OF TWO CONCURRENT FIVE YEAR SENTENCES IN THE CUSTODY OFTHE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION OF TWOCOUNTS OF FELONY MALICIOUS MISCHIEF AND SENTENCE OF TWOCONCURRENT FIVE YEAR SENTENCES TO BE SERVED CONSECUTIVELY WITHTHE FELONIOUS TAKING OF A VEHICLE SENTENCES IS AFFIRMED. ALLCOSTS OF THIS APPEAL ARE ASSESSED TO LEE COUNTY.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
[1] The original instruction ended with a two-sentence paragraph which was stricken by the court. The stricken language does not appear in the record. However, based upon contextual clues found in the record, the stricken language appears to have suggested that the accomplices' testimony was unsupported or uncorroborated. This stricken language is unrelated to the substance of Hendrix's argument regarding this jury instruction.