# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00215-COA

LADELL MAGGETT, JR., JERRY STEWART        APPELLANTS
A/K/A JERRY UNDRE STEWART AND KELVIN
TAYLOR A/K/A KEVIN TAYLOR

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/13/2014 |
| TRIAL JUDGE: | HON. ALBERT B. SMITH III |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT, SECOND JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANTS: | AZKI SHAH |
| | KELVIN TAYLOR (PRO SE) |
| | JERRY STEWART (PRO SE) |
| | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LADONNA C. HOLLAND |
| DISTRICT ATTORNEY: | BRENDA FAY MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | EACH APPELLANT CONVICTED OF CAPITAL MURDER AND SENTENCED TO LIFE WITHOUT THE POSSIBILITY OF PAROLE; AND POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCED TO TEN YEARS AND A $5,000 FINE; WITH THE SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS |
| DISPOSITION: | AFFIRMED: 12/13/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., FAIR AND WILSON, JJ.**

**FAIR, J., FOR THE COURT:**

¶1. The body of Quenton McKay was found on a gravel road in Bolivar County, about a mile off Highway 61. McKay had been shot six times, and his wrists were bound with duct tape. The State alleged that McKay was executed on the orders of Jerry Stewart after a drug deal gone bad. Stewart, Laddell Maggett, and Kelvin Taylor were convicted of capital murder. Each was also convicted of possession of a firearm after a felony conviction. They appeal, raising numerous issues. We find no error and affirm.

## FACTS

¶2. The prosecution was built on the testimony of two accomplices turned State's witnesses, Tresten Chatman and Christopher Anderson. There were some differences in their accounts, but both agreed that McKay and Chatman had arranged for Stewart to buy a kilogram of cocaine from an associate of McKay's in Memphis, and the cocaine turned out to be mostly baking soda. On the way back from the exchange, Stewart summoned Anderson, Maggett, and Taylor for assistance. McKay's hands were bound, and he was given a phone and told to get the money back. After McKay could not do it, they took him to a remote location, where Chatman was ordered to shoot McKay or be killed himself. Chatman fired one or more shots, followed by Maggett, and depending on the account, Taylor.

¶3. Chatman testified that his family had been threatened if he talked. But Chatman was soon arrested, and after initial denials, he implicated Stewart, Taylor, and Anderson – and,

2

eventually, Maggett. Anderson's account agreed in most respects, but he, like Chatman, appeared to minimize his own culpability.

¶4. Stewart testified in his own defense. He admitted to being involved in the drug deal, but according to him, his role was just to drive the vehicle. Anderson and Stewart's brother were the real purchasers of the cocaine. Stewart claimed that he parted ways with Chatman, Anderson, and McKay after returning from the drug deal, with the implication that the State's witnesses had murdered McKay and were trying to pin it on him. Stewart and Maggett also produced alibi witnesses who claimed to have been with them at the time of the killing.

¶5. Convicted by the jury, Maggett, Stewart, and Taylor appeal.

## DISCUSSION

¶6. All three defendants are represented by counsel on appeal, who have filed briefs on their behalf. Stewart and Taylor have also filed pro se supplemental briefs. We have consolidated and reorganized the issues for efficiency and clarity.

### 1. Impeachment of Anderson

¶7. Prior to trial, Maggett filed a motion to impeach Anderson with his prior convictions for possession of cocaine and armed robbery, which were more than ten years old. The trial court denied the motion.

¶8. On appeal, Maggett and Stewart contend that this was error. They rely on *Young v. State*, 731 So. 2d 1145 (Miss. 1999), which found a trial court in error for essentially conducting a Mississippi Rule of Evidence 609(a)(1)(B) balancing test when the witness was

3

not a party. It held that admissibility should have been analyzed under the more permissive Rule 609(a)(1)(A).

¶9.     This authority is simply inapposite, as Rule 609(a) applies to convictions less than ten years old, and Anderson's convictions were more than ten years old.  Rule 609(b) applies to convictions over ten years of age, stating:

> (b) Limit on Using the Evidence After 10 Years.  This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later.  Evidence of the conviction is admissible only if:
>
> > (1) its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and
> >
> > (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use.

The record reflects that the trial court properly considered this issue under Rule 609(b). No abuse of discretion has been shown.

### 2.     Severance

¶10.    Stewart and Maggett next contend that the trial court erred in denying their motions to sever the trials based on retroactive misjoinder, as they were charged with felony murder and being in possession of a firearm after a felony conviction.  This argument fails because the doctrine of retroactive misjoinder can only apply when one of the counts has been vacated or otherwise found to be invalid, and the appealing defendant was prejudiced by being tried on the supported and unsupported allegations together.  *See Williams v. State*, 37

4

So. 3d 717, 725-26 (¶25) (Miss. Ct. App. 2010). That did not occur here, as we affirm both counts for all of the defendants.

¶11. Maggett also presents a cursory argument that his trial should have been severed based on the fact that there was more evidence against Stewart than the other defendants.[1]

¶12. "Defendants jointly indicted for a felony are not entitled to separate trials as a matter of right." *Carter v. State*, 799 So. 2d 40, 44 (¶13) (Miss. 2001). On the contrary, "[j]oint trials generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability – advantages which sometimes operate to the defendant's benefit." *Cavett v. State*, 717 So. 2d 722, 727 (¶30) (Miss. 1998) (quoting *Richardson v. Marsh*, 481 U.S. 200, 210 (1987)). A trial court's denial of a motion to sever will not be overturned on appeal absent an abuse of discretion. *King v. State*, 857 So. 2d 702, 716 (¶19) (Miss. 2003); URCCC 9.03. Severance is required only when it "is necessary to promote a fair determination of the defendant's guilt or innocence." *Carter*, 799 So. 2d at 44 (¶13). The two criteria to be considered in reviewing the denial of a severance are (1) "whether . . . the testimony of one co-defendant tends to exculpate that defendant at the expense of the other defendant" and (2) "whether the balance of the evidence introduced at trial tends to go more to the guilt of one defendant rather than the other." *Hawkins v. State*, 538 So. 2d 1204, 1207 (Miss. 1989). A showing of prejudice from the failure to grant

---

[1] Maggett and Stewart are represented by the same attorney on appeal, but he apparently makes this contention only on Maggett's behalf.

5

severance is required to secure reversal on appeal. *See id.*

¶13.  Here, Maggett admits that Stewart did not attempt to exculpate himself at his codefendants' expense.  He focuses only on the second factor, claiming that there was much more evidence of Stewart's guilt than his own.  Maggett points to the evidence concerning the drug deal, which Stewart was admittedly a part of.  However, it was alleged that the crimes occurred in the immediate wake of the drug deal, and that the deal's failure was the motive for McKay's kidnapping and murder.  Thus, the evidence of the drug deal would have been admissible in a hypothetical separate trial for Maggett, as evidence of motive and to tell the whole story of the offense.  The State has a "legitimate interest in telling a rational and coherent story of what happened." *Keller v. State*, 138 So. 3d 817, 855 (¶93) (Miss. 2014) (citation omitted).  Evidence of prior bad acts, by the defendant or others, "is admissible in instances where the prior bad acts are integrally related in time, place and fact with the crime for which the defendant is being tried." *Id.* (citation omitted).

¶14.  We find no abuse of discretion in denying the motions to sever.

### 3. Legal Sufficiency of the Indictment

¶15.  Next, all three appellants contend that their indictments for capital murder, with the underlying crime of kidnapping, were fatally defective because they failed to explicitly specify that McKay was the victim of the kidnapping as well as the murder.

¶16.  This objection to the indictments was not raised before the trial court. Nonjurisdictional defects in the indictment may not be attacked for the first time on appeal

absent a showing of cause and actual prejudice. *Crawford v. State*, 716 So. 2d 1028, 1050-51 (¶82) (Miss. 1998) (superceded by rule on other grounds, as recognized by *Miss. Transp. Comm'n v. McLemore*, 863 So. 2d 31, 39 (¶22) (Miss. 2003)). Mississippi law recognizes only two such jurisdictional defects: where the "indictment fails to charge a necessary element of a crime or if there exists no subject matter jurisdiction." *Banana v. State*, 635 So. 2d 851, 853 (Miss.1994); *see also Brown v. State*, 37 So. 3d 1205, 1209-10 (¶9) (Miss. Ct. App. 2009).

¶17.   Here, the appellants appear to be attempting to travel under the first exception – the lack of a necessary element.  They rely entirely on *Rowland v. State*, 98 So. 3d 1032, 1038-39 (¶12) (Miss. 2012), where the Mississippi Supreme Court held that a capital murder indictment, with the underlying offense of robbery of certain specified individuals "and others," would not be valid as to the "others." In so doing, the supreme court seemed to hold that the identity of the victim of the underlying offense, when it is robbery, is a necessary element of an indictment for capital murder. *See id.* That would have been an aberration, as the supreme court had held before *Rowland* that, other than a limited exception for burglary, "it is not necessary to specifically set forth the elements of the underlying felony used to elevate the crime to capital murder." *Gray v. State*, 728 So. 2d 36, 70-71 (¶¶173-74) (Miss. 1998) (overruled on other grounds by *Franklin v. State*, 170 So. 3d 481, 487 (¶22) (Miss. 2015)). Since *Rowland*, the old rule has been repeated in even more unequivocal language in *Batiste v. State*, 121 So. 3d 808, 836 (¶43) (Miss. 2013): "In capital-murder

cases, unless the underlying felony is burglary, the underlying felony that elevates the crime to capital murder must be identified in the indictment along with the section and subsection of the statute under which the defendant is being charged. No further detail is required." (Citations omitted).

¶18. We conclude that *Rowland* has been superseded by *Batiste* on this point, and that the identity of the victim of the underlying offense is not a necessary element of capital murder. The indictments here were adequate under *Batiste*. This issue is without merit.

### 4. Admissibility of Statements

¶19. Maggett and Stewart challenge the denial of a pretrial defense motion to determine the admissibility into evidence of out-of-court statements made by Anderson and Chatman. The trial court found them to be hearsay and not subject to any exception, though it did allow the defendants to use the statements extensively in impeaching Anderson and Chatman, including allowing the defendants to play nearly the entire recordings for the jury. On appeal, Maggett and Stewart contend that the statements were party admissions under Mississippi Rule of Evidence 801(d)(2)(A) and should have been admitted into evidence. This contention is without merit, as witnesses for the State are not "party opponents" under the hearsay exception in Rule 801(d)(2). *See Goodson v. State*, 566 So. 2d 1142, 1148 n.11 (Miss. 1990). Maggett and Stewart also seem to argue that the statements were admissible under Rule 801(d)(2)(E) as statements "by a co-conspirator of a party" opponent in furtherance of a conspiracy. This argument fails for the same reason as the first.

8

### 5.     Sufficiency of the Evidence

¶20.    Maggett and Stewart challenge the sufficiency of the evidence. In evaluating the sufficiency of the evidence, this Court must decide whether it allows a jury to find "beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." *Bush v. State*, 895 So. 2d 836, 843 (¶16) (Miss. 2005). "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 315 (1979)).

¶21.    The appellants point to the rule of law that a conviction cannot be upheld when it is solely based on the testimony of an accomplice, "if the accomplice testimony is uncorroborated and is unreasonable, self-contradictory, or substantially impeached." *Cowart v. State*, 178 So. 3d 651, 667 (¶44) (Miss. 2015) (citation omitted). The State seems to concede that both Anderson and Chatman were accomplices for the purpose of this analysis.[2] We have previously observed that there is no Mississippi caselaw to support the contention that one accomplice cannot corroborate another, *Hendrix v. State*, 957 So. 2d 1023, 1028 (¶9)

---

[2] Although both witnesses actually denied criminal responsibility for McKay's death, for our purposes one is considered an accomplice "if the evidence admits a reasonable inference that the witness may have been a co-perpetrator or the sole perpetrator." *Brown v. State*, 890 So. 2d 901, 910 (¶23) (Miss. 2004).

(Miss. Ct. App. 2007); but the State seems to accept that accomplices cannot corroborate one another, and so we assume that for the purposes of our analysis.

¶22.    We first address the State's contention that the accounts were corroborated by certain details, especially Chatman's testimony.  Chatman claimed that McKay's head was covered with a "Spider-Man" themed pillowcase, taken from Stewart's house.  When the house was searched by the authorities, Spider-Man bedsheets were observed, but not matching pillowcases.[3]  Chatman also said Stewart had snack cakes on top of his refrigerator, which he had seen because Stewart gave one to McKay; and snack cakes were found where he said they would be.  It is true that "[o]nly slight corroboration of an accomplice's testimony is required to sustain a conviction," but "[t]he testimony that must be corroborated is the part connecting the defendant to the crime." *Osborne v. State*, 54 So. 3d 841, 846 (¶22) (Miss. 2011) (citations omitted).  The pillowcase Chatman said was used to cover McKay's head was never independently shown to be connected to the murder, nor were the snack cakes.  This evidence simply showed that Chatman had been inside Stewart's house; it did not necessarily tie the defendants to the murder.  And so we cannot find the accomplice testimony here to have been corroborated.

¶23.    "If the [accomplice] testimony is not corroborated, a cautionary jury instruction is required." *Id.*  The instruction was, in fact, given, and the jury nonetheless convicted.  So we take the question on appeal to be whether the accomplice testimony here was so

---

[3] It is unclear whether the authorities actively searched for the pillowcases.

"unreasonable, self-contradictory, or substantially impeached" that a properly instructed jury could not find it sufficient to sustain a conviction. *See Cowart*, 178 So. 3d at 667 (¶44).

¶24. As to the contention that the testimony was substantially impeached, the appellants point to Anderson's and Chatman's initial denials of knowledge of the murder and the contradictions between their two accounts. Clearly, Anderson and Chatman were impeached; but prior inconsistent statements of an accomplice, if explained at trial, do not necessarily render the testimony "substantially" impeached as a matter of law. *See Osborne*, 54 So. 3d at 847 (¶23); *McNeal v. State*, 757 So. 2d 1096, 1098 (¶5) (Miss. Ct. App. 2000).

¶25. Likewise, the accounts were not *self*-contradictory, though they did contradict each other on some of the details, notably: whether McKay had a pillowcase over his head when he was shot, whether Chatman shot McKay once or many times, and whether Taylor was one of the shooters. These disputes between the two witnesses presented a question of credibility for the jury, and our standard of review does not permit this Court to substitute our judgment for that of the jury on the question of credibility. It has been "repeatedly held that in a criminal prosecution the jury may accept the testimony of some witnesses and reject that of others, and that they may accept in part and reject in part the evidence on behalf of the [S]tate or on behalf of the accused. In other words, the credibility of witnesses is not for the reviewing court." *Hughes v. State*, 735 So. 2d 238, 276-77 (¶177) (Miss. 1999) (citation omitted). Furthermore, in reviewing the sufficiency of the evidence, the evidence must be viewed in the light most favorable to the prosecution. *Bush*, 895 So. 2d at 843 (¶16).

11

¶26. The record reflects that Chatman and Anderson were thoroughly cross-examined on their initial denials and on the inconsistencies between their testimonies at trial. The jury was also properly instructed that it should view the testimony of accomplices with "great care and caution," and it still elected to convict. We cannot find the convictions here to be unsupported by sufficient evidence.

### 6. Weight of the Evidence

¶27. Taylor contends that his conviction was against the overwhelming weight of the evidence. The legal standard for reviewing a challenge to the weight of the evidence is similar to, but distinct from, the review of a challenge to the sufficiency of the evidence. An attack on the weight of the evidence will be successful only when the verdict "is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Bush*, 895 So. 2d at 844 (¶18). "[T]he evidence must be viewed in the light most favorable to the verdict[.]" *Jenkins v. State*, 131 So. 3d 544, 551 (¶23) (Miss. 2013). A new trial should be granted "only in exceptional cases in which the evidence preponderates heavily against the verdict." *Bush*, 895 So. 2d at 844 (¶18) (citation omitted). And because the trial judge had a firsthand view of the trial, "reversal is warranted only if the trial court abused its discretion in denying [the] motion for a new trial." *Waits v. State*, 119 So. 3d 1024, 1028 (¶13) (Miss. 2013).

¶28. Factually, Taylor's challenge to the weight of the evidence is similar to the other defendants' challenge to its sufficiency. As we explained above, there were some

contradictions between the accounts of the two witnesses, and each had previously made inconsistent statements. But the accounts were also largely in agreement, and the credibility of the individual witnesses was for the jury. *Hughes*, 735 So. 2d at 276-77 (¶177).

¶29. Taylor adds the additional argument that the story advanced by Chatman and Anderson does not make sense – he asks why Stewart would call on his friends for assistance in dealing with Chatman and McKay, and why Stewart would blame McKay and Chatman for his being ripped off. Thus, according to Taylor, the State's proof is the "unreasonable," uncorroborated accounts of accomplices, and thus cannot sustain his convictions. *See Cowart*, 178 So. 3d at 667 (¶44). However, there are reasonable explanations for Stewart's conduct: he called for help because he was outnumbered by McKay and Chatman, and he blamed them for the drug deal's failure because they were the ones who had arranged it. We find no merit to these contentions, and we cannot find Taylor's convictions to be against the overwhelming weight of the evidence.

### 7. Admissibility of Cell Phone Records

¶30. Next, Maggett and Stewart challenge the trial court's refusal to admit into evidence cell phone records from phones allegedly belonging to or used by various individuals involved in the case. The trial court refused to admit the records into evidence because they were not authenticated. On appeal, Maggett and Stewart contend that the trial court erred in refusing to find the records self-authenticating under Mississippi Rule of Evidence 902(11) as a certified records of a regularly conducted activity. However, Rule 902(11)(C) requires

that "the proponent give[] notice to adverse parties of the intent to offer the records as self-authenticating under this rule and provide[] a copy of the records and of the authenticating certificate" so that the adverse party has "a fair opportunity to consider the offer and state any objections." Here, it is undisputed that notice was not given pursuant to this rule. The rule specifically requires that the notice be of the intent to offer the documents as self-authenticating; providing them in discovery is not enough.

¶31.    Maggett and Stewart contend that, even if the records are not self-authenticating, they would have been admissible under the "catch all" hearsay exception, Mississippi Rule of Evidence 803(24). But even if we were to assume that the records met a hearsay exception, hearsay exceptions and authentication are separate issues. *Burchfield v. State*, 892 So. 2d 248, 254 (¶20) (Miss. Ct. App. 2004). We find no error in the exclusion of the phone records on the basis of authenticity.

### 8.    Prosecutorial Misconduct – Comments

¶32.    Next, Stewart and Maggett allege prosecutorial misconduct in two questions from the prosecutor during her cross-examination of Stewart. In one, Stewart was asked whether he owned a nightclub, which he denied. This was in reference to a business Stewart owned, which he described as a restaurant. Later, in closing arguments, the prosecutor claimed that the restaurant really was a nightclub, apparently without any basis in record. Also during Stewart's cross-examination, she asked Stewart where his girlfriend's children were during the time she provided him with an alibi. Stewart replied that they were not doing well in

14

school and had moved to live with their grandparents.  The prosecutor then asked whether the children were doing poorly in school because of the conditions at home, which Stewart denied.

¶33.   We note that no objections were made to either the question or the statement during the closing argument.  These issues were waived and are procedurally barred on appeal. *Havard v. State*, 928 So. 2d 771, 791 (¶34) (Miss. 2006).  Notwithstanding the procedural bar, we see no reversible error in either comment.  The jury was properly instructed that remarks of counsel were not evidence and that it should disregard statements that were not based in the evidence.  Furthermore, reversible error can only be found where improper statements prejudicially affected the defendants' rights and where "the natural and probable effect of the improper argument of the prosecuting attorney is to create an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Franklin v. State*, 136 So. 3d 1021, 1030 (¶31) (Miss. 2014).  We cannot find that these statements of the prosecutor rose to that level.

**9.      Prosecutorial Misconduct – Cross-Examination of Stewart's Girlfriend**

¶34.   Stewart complains in his pro se brief regarding the prosecutor's question to his girlfriend, on cross-examination, about whether she was "aware of some property Jerry Stewart has on Douglas Street."  After an objection to the lack of a factual basis was overruled, without the prosecutor being required to give a factual basis for the question, the prosecutor restated the question as whether the girlfriend was aware of "any" property

15

Stewart had on Douglas Street. The girlfriend answered "no." On appeal, Stewart complains that the questions impermissibly insinuated that Stewart possessed a location where some of the events took place, a house on Douglas Street in Clarksdale.

¶35. The man who owned the house testified that it had been rented by Anderson, though he was inconsistent about whether Anderson rented the house at the relevant time. Anderson himself denied that he rented it, though he admitted he had sometimes played video games there. Stewart denied that he owned or rented it; he claimed it was Anderson's and that it was a "trap house."[4] Chatman said he had "heard on the street" that Anderson rented the house.

¶36. Thus, the record reveals a genuine issue about who controlled the house during the relevant time, but other than the fact that some witnesses described Stewart using the house as he pleased, there was little to no evidence Stewart owned or rented it. While we agree with Stewart that the questions suggest that he owned the house, and that there is no apparent good faith factual basis for the question, we find any error here to be harmless. Insinuations on cross-examination can be reversible error, but to rise to the level of reversible error, they must be unfairly prejudicial and result in the denial of a fair trial to the accused. *See Archer v. State*, 118 So. 3d 612, 619-20 (¶¶18-22) (Miss. Ct. App. 2012).

¶37. Again, the jury was instructed that remarks of counsel are not evidence, and that it

---

[4] A trap house is one used in the drug trade or for other illicit activities. *See, e.g., Gomillion v. State*, 769 S.E.2d 914, 915 (Ga. 2015).

should disregard statements that were not based in the evidence. The question of who owned the house was collateral to the crimes at issue, and any prejudice from being associated with a "trap house" would be cumulative to Stewart's own admissions regarding his participation in the drug trade, including previously visiting the house at issue. It is axiomatic that an accused is entitled to a fair trial, not a perfect one. *See, e.g., Ronk v. State*, 172 So. 3d 1112, 1148 (¶109) (Miss. 2015). We cannot find that the prosecutor's insinuation here denied Stewart a fair trial.

### 10. Prosecutorial Misconduct – Anderson's Testimony

¶38. Maggett and Stewart complain that the prosecutors allowed Anderson to testify that he had not gone to Stewart's house at a certain point, after he supposedly admitted he had done so when he pled guilty to charges relating to the incident.[5] This contention is based on a purported guilty plea transcript that is not found in the record, and we cannot consider evidence outside the record. *Galloway v. State*, 122 So. 3d 614, 638 (¶52) (Miss. 2013). Consequently we find this claim to be without merit.

¶39. Stewart also contends, in his pro se brief, that a mistrial should have been granted after the trial court sustained an objection to a question directed to Anderson on the question of why he did not come forward sooner. Anderson had testified that it was because he felt threatened, but on cross-examination he was asked about whether he had an opportunity to

---

[5] From the purported transcript, when stating the factual basis, the prosecutor said that Anderson "possibly" was there. At the murder trial, Anderson testified he was not there, but Chatman said he was.

17

report everything the next day, which was Anderson's birthday. Anderson admitted he had gone out to eat at a restaurant, and a police officer – who was the boyfriend of Stewart's sister – had been there. On redirect, the prosecutor asked Anderson whether he knew the officer had been "fired for being a corrupt police officer." Anderson answered "no," but the trial court sustained a defense objection and admonished the jury not to consider the question for any purpose whatsoever. The trial court subsequently denied defense motions for a mistrial.

¶40.    "Whether to grant a motion for a mistrial is within the sound discretion of the trial court." *Gunn v. State*, 56 So. 3d 568, 571 (¶14) (Miss. 2011) (citation omitted). Here, the subject of the question was collateral. Moreover, "[i]t is presumed that a jury follows the direction of a trial judge to disregard an improper comment or testimony." *Williams v. State*, 971 So. 2d 581, 590 (¶31) (Miss. 2007) (citation omitted). We cannot find any abuse of discretion in the trial court's refusal to grant a mistrial.

### 11.    Ineffective Assistance of Counsel – Stewart

¶41.    Stewart contends, in his pro se brief, that he received ineffective assistance of counsel at trial. He points to counsel's failure to object to certain questions and statements of the prosecutor, claiming that the prosecutor lacked a good faith factual basis for the questions.

¶42.    Mississippi Rule of Appellate Procedure 22(b) provides that issues such as ineffective assistance of counsel, which may be raised in post-conviction-relief proceedings, are allowed on direct appeal only "if such issues are based on facts fully apparent from the record." The

State has not stipulated that the record is sufficient to review this issue on direct appeal. *See Read v. State*, 430 So. 2d 832, 841 (Miss. 1983). Given that, and the fact that this claim depends on facts outside the record, we deny relief on direct appeal without prejudice to a future post-conviction claim. *See Robinson v. State*, 25 So. 3d 1084, 1086 (¶11) (Miss. Ct. App. 2010).

### 12. Ineffective Assistance of Counsel / Judicial Misconduct – Taylor

¶43. In his pro se brief, Taylor contends that his trial counsel was constitutionally ineffective for numerous reasons, including failing to investigate his defenses relating to alibi witnesses and cell phone records. He also points to a bar complaint he apparently filed against his attorney.

¶44. Like Stewart's contentions above, Taylor's ineffective assistance of counsel claims are based on evidence outside the record and are best pursued in a motion for post-conviction relief. We deny relief on this issue without prejudice to a future post-conviction claim.

¶45. Taylor also alleges that the trial judge violated the Mississippi Code of Judicial Conduct by failing to act on letters he says he sent to the judge complaining about his trial counsel. The record reflects that Taylor's counsel filed a motion to withdraw shortly before the trial, which the trial court denied. The court did, however, appoint a second attorney to represent Taylor. The judge then asked Taylor, directly and on the record, whether that would satisfy him, and Taylor responded that it would.

¶46. Taylor's claim of judicial misconduct appears to be a rehashing of his claim of

ineffective assistance of counsel, and he has not shown how this alleged judicial misconduct could amount to reversible error, so we find it without merit.

### 13. Arrest Warrant – Taylor

¶47. Taylor next challenges the affidavit supporting the warrant for his arrest. He claims that affidavit is conclusory and not based upon personal knowledge.

¶48. It is unclear why Taylor believes that this was reversible error, but the issue appears to have been raised for the first time on appeal and is procedurally barred. *Ronk*, 172 So. 3d at 1139 (¶68).

### 14. Arrest Warrant – Chatman

¶49. Taylor challenges the affidavit supporting the warrant for Chatman's arrest, as well as the conduct of Chatman's interrogation, which he claims was illegal. According to Taylor, all of the evidence stemming from Chatman's arrest should have been excluded as "fruit of the poisonous tree."

¶50. This issue is also raised for the first time on appeal and is procedurally barred.

### 15. Prosecutorial Misconduct – Suppression of Evidence

¶51. Taylor alleges several instances of prosecutorial misconduct. He complains that prosecutors committed a *Brady*[6] discovery violation by failing to turn over results of a DNA test conducted on what appeared to be a few small spots of blood found about sixty feet from McKay's body, marked "#4"at the scene. Taylor also accuses the prosecutors of placing the

---

[6] *Brady v. Maryland*, 373 U.S. 83 (1963).

20

blood swabs from #4 in a misleading place on the list of discovery, and he alleges some sort of subterfuge by the introduction into evidence at trial of a photograph of the spots rather than the blood swabs themselves or DNA test results. Taylor claims that if the blood had been DNA tested, it would have been shown to have come from the victim and that its placement was inconsistent with the State's theory as to how McKay was killed.

¶52. Taylor further alleges that the State suppressed evidence by refusing to concede the authenticity of the phone records previously discussed above. He also appears to allege that the prosecution suppressed evidence by contesting the admissibility of the recordings of statements given to police by the prosecution witnesses.

¶53. Taylor's specific claim that the State failed to turn over DNA test results of the blood sample is simply unsupported by the record. Otherwise, he seems to concede that the blood sample was disclosed in discovery; where it appears on the list is of no consequence. Taylor's other arguments seem to confuse discovery with the use and admissibility of evidence at trial. Discovery is the "compulsory disclosure, at a party's request, of information that relates to the litigation." Black's Law Dictionary 478 (7th ed. 1999). Evidence that is discoverable is not necessarily admissible at trial, and a party does not commit a discovery violation by objecting to the admissibility of something it has previously disclosed in discovery. We find no merit to these contentions.

### 16. Prosecutorial Misconduct – False Testimony

¶54. Taylor alleges that the testimony of Anderson and Chatman was false and that the

21

prosecutors offered it knowing that it was false – a *Napue* violation.  *See Napue v. Illinois*, 360 U.S. 264, 269 (1959).  Taylor bases this argument on the apparent blood drops discussed in the prior issue, which he claims conclusively prove that McKay was killed at a different location from where his body was found, and thus that Anderson and Chatman's accounts were untrue.

¶55.    The record reflects that the apparent blood drops were pointed out to the jury and were argued to be inconsistent with exactly how the prosecution alleged McKay was killed.  This may have been a legitimate argument based on the unexplained presence of a small amount of what appeared to be blood, but Taylor grossly exaggerates by contending that the blood drops were definitive and undeniable proof McKay was killed at a different location from the one alleged.  He falls far short of showing that the State knowingly used false evidence to obtain his convictions.  This issue is without merit.

### 17.    Prosecutorial Misconduct – Cumulative Effect

¶56.    Taylor argues that he has demonstrated prosecutorial misconduct under his various prior issues, and that the cumulative effect denied him a fair trial.  We have rejected Taylor's contentions, and although we have acknowledged a few instances of improper comments by the prosecutor during this lengthy trial, we do not find their cumulative effect denied Taylor or the other defendants a fair trial.  This issue is without merit.

### CONCLUSION

¶57.    After reviewing the record, we find that no reversible error has been shown, and so

we affirm the convictions and sentences of each of the defendants.

¶58.   **THE JUDGMENT OF THE CIRCUIT COURT OF BOLIVAR COUNTY, SECOND JUDICIAL DISTRICT, FOR EACH APPELLANT, OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE WITHOUT THE POSSIBILITY OF PAROLE; AND POSSESSION OF A FIREARM BY A CONVICTED FELON AND SENTENCE OF TEN YEARS AND A $5,000 FINE; WITH THE SENTENCES TO BE SERVED CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED.   ALL COSTS OF THIS APPEAL ARE ASSESSED TO BOLIVAR COUNTY.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, JAMES, WILSON AND GREENLEE, JJ., CONCUR.**