971 So.2d 608 (2007)
William T. McCAIN a/k/a William McCain, Appellant,
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01892-COA.
Court of Appeals of Mississippi.
May 1, 2007.
Rehearing Denied September 11, 2007.
Certiorari Denied December 13, 2007.
*610 Virginia L. Watkins, attorney for appellant.
Office of the Attorney General by W. Glenn Watts, attorney for appellee.
Before LEE, P.J., BARNES and CARLTON, JJ.
CARLTON, J., for the Court.
¶ 1. William "Billy" McCain was convicted by a Hinds County Circuit Court jury for the crime of murder. On appeal, he argues a violation of his right to testify and other errors during his trial. Finding no error, we affirm.

FACTS
¶ 2. McCain and the victim, Ginger Willis, had been in a relationship for over ten years. McCain and Willis lived at Ridgeview Apartments in Clinton, Mississippi, where Willis was also employed as the manager. On September 18, 2004, the two were involved in a heated argument about McCain's drug use. According to McCain's own statements, he returned to the couple's apartment after a few days of heavy drug use. He was still under the influence of crystal methamphetamine and crack cocaine when he returned to the apartment.
¶ 3. According to McCain, Willis pushed him from behind and he fell to his knees. McCain then grabbed a metal hydraulic jack and repeatedly struck Willis. McCain then obtained a knife from the kitchen and repeatedly stabbed Willis. Willis died from bleeding caused by a knife wound to her jugular vein. Had Willis not died of bleeding, she would have died from blunt force trauma to her head because of bruising to her brain. Willis had eleven other non-lethal stab wounds on her fingers, hands and forearms consistent with "defensive wounds." After Willis was beaten and stabbed, McCain stole money out of her purse in order to purchase more drugs.
¶ 4. Another resident of the apartments noticed that Willis had not been seen for a while. There was no answer to phone calls made to her apartment. The resident went to the apartment where Willis lived and there was no response. With a suspicion *611 that something was wrong, the resident then found an open window and discovered the lifeless body of Willis on the bedroom floor. Police recovered the butcher knife and jack from a closet in the apartment.
¶ 5. The day following the murder McCain turned himself in to law enforcement in Perry County, Mississippi. He was then taken into custody by the Clinton Police Department. McCain was indicted for deliberate design murder under Mississippi Code Annotated Section 97-3-19(1)(a) (Rev.2006). A jury convicted McCain for the crime as charged. McCain received a sentence of life imprisonment without the possibility of parole. His appeal has been assigned to this Court.

DISCUSSION
1. Right to Testify
¶ 6. McCain argues his right to testify was violated and that this prevented him from presenting a meaningful defense. He argues that he sought to testify to the jury about the events of September 18. Just prior to a mid-day recess, the trial judge was careful to ensure McCain understood his rights, including the right to testify. After the trial judge informed McCain about his right to testify, the judge stated:
What I am telling you is that whatever your preliminary decision is that you have the right to change your mind and testify or not testify at any point up until the point that your attorney stands and announces in open court that you rest your case. Do you understand?
McCain responded that he understood. Counsel for McCain then made a motion for a directed verdict. The court denied the motion and proceed into recess. After the midday recess, counsel for McCain requested a bench conference, the content of which was not recorded. Upon conclusion of the bench, the trial judge stated:
BY THE COURT: What I would like to do then, unless there is some objection, is to go ahead and go through the jury instructions so I don't have to send the jury immediately back out. And then when the jury comes in, [counsel for McCain], I'll need you to rest your case in their presence.
BY [THE PUBLIC DEFENDER]: Yes, sir.
The actual request that was made at trial came after the trial judge ruled on all of the jury instructions, which included a refusal to give the jury an instruction on manslaughter. Counsel for McCain made the following request:
BY [THE PUBLIC DEFENDER]: Your Honor, based on a discussion with my client and the Court's rulings on the instructions, we're going to ask the Court to allow us to  I know this is extraordinary  ask you to allow us to reopen the defense's case and call our client to the witness stand.
The prosecution objected due to concern of unfairness because McCain could tailor his testimony to create a factual basis for the lesser charge of manslaughter after the trial judge had already ruled on the matter. The trial judge agreed with the prosecution but allowed McCain to testify "to make a record by way of proffer." In response to the trial judge's decision, McCain's counsel responded, "That would be great Judge. Thank you," and proceeded to call McCain to the stand. No objection was made by the defense and the issue was not raised in McCain's post-trial motion for judgment notwithstanding the verdict or a new trial in the alternative.
¶ 7. A person's right to testify when defending against a charged crime is protected under the Sixth Amendment of the United States Constitution and under Article *612 3, Section 26 of our state constitution. Issues raised for the first time on appeal and not contemporaneously objected to at trial are waived. Tate v. State, 912 So.2d 919, 928(¶ 27) (Miss.2005); Jones v. State, 856 So.2d 285, 293(¶ 27) (Miss.2003). However, a violation of a constitutional right "may reach such serious dimension" that it will be addressed when raised for the first time on appeal. Whigham v. State, 611 So.2d 988, 995 (Miss.1992).
¶ 8. Although a claim of violation of a constitutional right may be heard for the first time on appeal, known constitutional rights may be waived "by an intentional relinquishment or abandonment." Minnick v. Mississippi, 498 U.S. 146, 160, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938)). This high standard of proof for waiving a constitutional right is applied to each case "upon the particular facts and circumstances surrounding that case. . . ." Id.
¶ 9. This Court granted McCain's request for an oral argument concerning his appeal. During that proceeding, counsel representing McCain conceded that this issue arises out of a technicality. The occasion that gave rise to this technicality was that the trial judge decided to avoid bringing the jury back into the courtroom so that one sentence could be uttered by the defense resting its case, and then have to send the jury back out, go through instruction and bring the jury back in to receive those instructions. Instead, the trial judge asked counsel if there was any objection to going through the instructions at that moment, and avoid having to bring in the jury only to send them out upon the defense stating that it rested.
¶ 10. McCain was specifically instructed on his right to testify in his own defense. The trial judge was careful to inform McCain that this decision was for McCain alone to decide. Counsel for McCain requested to "reopen" McCain's defense only after receiving an adverse decision on a jury instruction for manslaughter due to the absence of a factual basis for that instruction. The record does not demonstrate that McCain was refused an opportunity to present a defense which included testimony on his own behalf. The record and arguments demonstrate that counsel for McCain was satisfied that McCain received what he asked of the trial judge. McCain was not requesting to mount a meaningful defense by his own testimony. The fairness of his trial was not affected.
2. Post-Trial Motions
¶ 11. McCain argues that his motion for directed verdict should have been granted because the prosecution failed to prove all elements of deliberate design and depraved heart murder. The essence of McCain's argument is that he acted out of anger and rage rather than with deliberate design or with a depraved heart. McCain moved for a directed verdict at the close of the State's case. The trial judge denied the motion because there was ample testimony, including the number and severity of wounds, upon which the jury could find that McCain killed Willis with malice.
¶ 12. A directed verdict challenges the legal sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 16) (Miss.2005). The focus of our inquiry is "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)).
¶ 13. McCain was charged for the crime of murder which requires the State to prove that McCain did kill and murder Ginger Willis, without the authority *613 of law, with deliberate design to effect the death of Ginger Willis. Miss.Code Ann. § 97-3-19(1)(a). For purposes of murder, the terms "malice aforethought" and "deliberate design" are synonymous. Tran v. State, 681 So.2d 514, 517 (Miss. 1996). This necessary element of malice cannot be formed at the instant of the killing but may be formed "very quickly." Carter v. State, 722 So.2d 1258, 1263(¶ 18) (Miss.1998) (citations omitted).
¶ 14. There was evidence that McCain repeatedly beat Willis with the hydraulic jack, then proceeded to the kitchen where he obtained a knife from a drawer. After obtaining the knife, McCain returned to the bedroom and repeatedly stabbed Willis. There was also evidence that McCain took money from Willis after he had inflicted the fatal wounds to buy more drugs. McCain did proffer testimony that he did not remember going to the kitchen and retrieving the knife or inflicting the fatal stab wounds to Willis. There was also evidence presented at trial that after McCain had beaten and stabbed Willis, he concealed the bloodied hydraulic jack and knife in a closet. When this evidence is reviewed in a light most favorable to the State, it is legally sufficient to support that any reasonable juror could have found beyond a reasonable doubt that McCain formed the required malice very quickly while obtaining the knife and prior to stabbing Willis. This issue is without merit.
3. Jury Instruction
¶ 15. McCain argues that the trial judge did not use the correct standard in refusing to give the jury an instruction on the lesser offense of manslaughter. McCain argues that there was an evidentiary basis to give an instruction on manslaughter, and that refusing the instruction denied him the right to present a defense to the jury. He argues that the instruction should have been granted if the trial judge viewed the evidence in a light most favorable to McCain. Mease v. State, 539 So.2d 1324, 1330 (Miss.1989).
¶ 16. The trial judge refused to grant an instruction on manslaughter because McCain failed to demonstrate the required degree of exasperation. The trial judge cited caselaw to support his conclusion that the facts of the case did not demonstrate a sufficient basis for a manslaughter instruction. Phillips v. State, 794 So.2d 1034, 1037(¶ 19) (Miss.2001) (stating the high standard required for a manslaughter instruction); Turner v. State, 773 So.2d 952, 954(¶ 8) (Miss.Ct.App.2000) (stating angry or reproachful words and shoving were an insufficient basis to support a manslaughter instruction absent testimony that violent and uncontrollable rage appeared to exist); Gaddis v. State, 207 Miss. 508, 514-16, 42 So.2d 724, 726 (1949) (an early holding that words of reproach, criticism, or anger are insufficient to reduce murder to manslaughter). McCain argues that the combination of Willis shoving him, swinging her purse at him, and using words of reproach or anger satisfied the factual basis for a manslaughter instruction.
¶ 17. Jury instructions are reviewed by reading them as a whole. Rushing v. State, 911 So.2d 526, 537(¶ 24) (Miss. 2005). McCain was entitled to jury instructions on his theory of the case. Despite this entitlement, the trial judge can refuse to give instructions which state the law incorrectly, repetitiously state a theory already covered, or have no evidentiary foundation. Id.
¶ 18. McCain relies upon the evidentiary standard as stated in Mease. There, the court pointed to an earlier case laying out that standard. Mease, 539 So.2d at 1330 (citing Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)). The Court has more recently looked to Harper in deciding *614 whether an adequate evidentiary basis existed for a manslaughter instruction. Moody v. State, 841 So.2d 1067, 1096-97 (¶ 97) (Miss.2003). In Moody, the court reiterated that the main distinction between murder and manslaughter is that malice is present in murder and absent in manslaughter. Id. at 1096(¶ 96) (citation omitted). The Court went on to say that a lesser offense instruction should only be granted if an evidentiary basis is present and that such instructions "should not be granted indiscriminately. . . ." Id. at 1097(¶ 97) (quoting Mease, 539 So.2d at 1329).
¶ 19. The standard established by the court as stated in Harper and more recently quoted in Moody states that:
A lesser-included offense instruction should be granted unless the trial judge and ultimately this Court can say, taking the evidence in the light most favorable to the accused and considering all the reasonable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of a lesser-included offense (conversely, not guilty of at least one essential element of the principal charge).
Moody, 841 So.2d at 1097(¶ 97) (quoting Harper, 478 So.2d at 1021) (other citations omitted). This standard was further clarified in stating that:
Only if this Court can say, taking the evidence in the light most favorable to the accused and considering all reasonable favorable inferences that can be drawn in favor of the accused from the evidence, and considering the evidence that the jury may not be required to believe any evidence offered by the State, that no hypothetical reasonable jury could convict [the defendant] of simple murder could it be said that the refusal of a lesser-included offense instruction was proper.
Id. This is an objective standard. Id. at 1097(¶ 98). The objective nature of this test requires us to determine whether a reasonable person would have been so provoked in the same situation as McCain. As applied to whether a manslaughter instruction should have been given, "the test is whether the defendant acted in the heat of passion and without malice." Id.
¶ 20. McCain's argument is not persuasive that provocative and angry words coupled with shoving and swinging a purse amount to a factual basis for a manslaughter instruction. Our inquiry does not take into account how McCain would act on a crack-cocaine and methamphetamine high. Malice may be inferred or implied where a deadly weapon is used. Phillips, 794 So.2d at 1037(¶ 11); Turner, 773 So.2d at 954(¶ 7). McCain's use of a knife requires that he overcome this implication of malice with evidence that he acted in the heat of passion.
¶ 21. The record reflects that evidence submitted by McCain to overcome this implication of malice is that he could not remember obtaining the knife from the kitchen and then returning to repeatedly stab the already beaten body of Willis. Inferences favorable to McCain must be reasonable. McCain conveniently forgot that he stabbed Willis after he had already beaten her with the metal jack but then remembered taking money out of her purse to purchase more drugs before leaving the scene of the crime. The trial court did not err in refusing to give an instruction on manslaughter.
4. Judicial Impartiality
¶ 22. McCain argues that his conviction should be set aside because the trial judge was not impartial by assisting the admission of certain photographs. *615 McCain concludes that he was deprived of his fundamental right of a fair trial. He cites caselaw in support of his specific complaint that the trial judge coached the prosecutor in how to lay a proper evidentiary predicate for admission of photographs by engaging in a monologue regarding the legal requirements for the introduction of photographs. Jackson v. State, 2003-KA-2606 (Miss. Mar. 24, 2005); West v. State, 519 So.2d 418 (Miss.1988); Brent v. State, 929 So.2d 952 (Miss.Ct.App.2005).
¶ 23. The State argues the issue is waived because McCain failed to make a contemporaneous objection at trial. The contemporaneous objection bar is limited where "the conduct of the trial judge, on the entire record, was so reprehensible and prejudicial as to deny a fair trial or due process of law." Powell v. Ayars, 792 So.2d 240, 248(¶ 29) (Miss.2001) (quoting Jackson Yellow Cab Co. v. Alexander, 246 Miss. 268, 277, 148 So.2d 674, 678 (1963)). The four volume record has been reviewed with care.
¶ 24. For clarity we recite the following portions of the trial that are relevant to McCain's argument. After the jury had been excused from the court room, counsel for McCain objected to the admission of a photograph of the victim because of its "highly gruesome" and "inflammatory effects." The trial judge then inquired as to whether the photo had any probative evidentiary value. The trial judge concluded that the photo had no probative value but also stated that he may reconsider that decision if anything in the photo became an issue later in the case.
¶ 25. The second point in the trial to which McCain directs our attention involved the prosecution questioning a detective during direct testimony. The prosecution attempted to admit into evidence a photo marked as State's Exhibit # 2. The photo depicted the body of Willis as found in her bedroom. The trial judge sustained the objection by the defense and stated that he would give his reasons on the record later.
¶ 26. Later in the trial the following exchange took place outside of the presence of the jury. The prosecution requested that the crime scene photo marked as State's Exhibit # 2 be admitted into evidence. The prosecution argued in part that the photo aided "in describing the circumstances of the killing and the corpus delecti of the murder itself. . . ." The trial judge responded:
BY THE COURT: Won't the corpus delecti be complete once you put the pathologist on to establish cause or death?
BY [THE PROSECUTOR]: Yes, sir.
BY THE COURT: Well, why don't you just play it safe and do that.
BY [THE PROSECUTOR]: Okay, Your Honor. Thank you.
¶ 27. The final exchange to which McCain directs our attention took place while the prosecution was questioning the physician who performed the autopsy of Willis. Outside the presence of the jury, counsel for McCain objected to autopsy photographs being admitted into evidence. The trial judge allowed the prosecution to proffer testimony through the witness in order to determine if the photos could later be admitted before the jury.
¶ 28. The prosecution attempted to have the photo, which is identified in the record as Exhibit # 18, admitted into evidence after the witness, Dr. Steve Hayne, a forensic pathologist, stated the identity of the victim in the photo. The trial judge asked, "[What's] the probative value? All he's done is state that that is Ginger Willis." The prosecution then questioned the *616 witness in detail about the exact contents of the photo. The defense stated that it did not care to question the witness concerning this particular photo. The following exchange then took place:
EXAMINATION BY THE COURT:
Q. Dr. Hayne, would this particular photograph aid and assist you in conveying and explaining to the jury the findings that you made or your opinions reached following the autopsy?
A. Yes, Your Honor. I think after the body has been washed and dried and cleaned, it shows pictorially the injuries that I'm essentially stating in audio form.
BY THE COURT: All right. The Court finds that the photograph is probative of the injuries that Dr. Hayne has covered.
The Court also notes that, as Dr. Hayne just indicated, this would be after the body was washed, and there is not an over abundance of blood.
The Court does not find that it's even an overly gruesome photograph, and certainly its probative value is not outweighed by any prejudice that the defense would suffer by the introduction.
So the objection will be overruled. It will be marked as Exhibit 18 into evidence.
¶ 29. McCain points to these portions of the trial in arguing that the trial judge assisted the prosecution "to lay the evidentiary foundation necessary for introduction of evidence, then sua sponte seek admission of the photographs." McCain listed this as one of the reasons why he should receive a judgment notwithstanding the verdict or a new trial.
¶ 30. The trial judge responded to McCain's allegation that he stepped in sua sponte to lay the proper foundation for photographs in the judgment denying McCain's post-trial motion. The reasoning of the trial judge included:
"The Court may interrogate witnesses. . . ." Rule 614(b), MRE. Golden v. State, 860 So.2d 820 (Miss.App.2003); Davis v. State, 811 So.2d 346 (Miss.App. 2001). Defendant only now takes issue with certain questions that the Court asked prosecution witness Dr. Stephen Hayne, concerning certain photographs. Rule 614(c), MRE, however, requires such objections be made "at the time or at the next available opportunity when the jury is not present." Dr. Hayne was the first witness to testify in this trial. His testimony concluded at the end of the first day of trial. The Court recessed at that time until 9:00 a.m., the following morning. There were numerous instances throughout the trial when the Court, out of the presence of the jury, asked counsel for both parties if there were matters that needed to be addressed either before the jury was brought in or before counsel and the Court exited the courtroom for a recess. Presented with many opportunities to do so out of the presence of the jury, defense counsel voiced no objection to the Court's questions of Dr. Hayne. Where, as here there is no objection, the issue is waived. Lacey v. Lacey, 822 So.2d 1132 (Miss.App.2002).
¶ 31. A criminal defendant is entitled to an impartial judge. McCain properly states that a "criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." Edwards v. Balisok, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997). The authority McCain relies upon offers little to support his contention. The unpublished Jackson decision cited to by McCain was a per curiam affirmance. In West, the improper conduct was that the trial judge became actively involved in the prosecution of the case. 519 So.2d at 419-21. *617 There, the trial judge asked his own questions during the cross-examination of a witness. Id. The judge also gave the prosecutor warnings about questions that would cause the matter to be reversed if appealed. Id. In all, the Court found that there were:
thirty (30) instances where the trial judge improperly, or unnecessarily, interjected himself into the proceedings. Of those thirty instances, twenty are of the type which may be characterized as coaching the district attorney. On nine occasions, the trial judge posed questions to witnesses where the district attorney's questions were ineffective. The questions by the trial judge generally served to strengthen the prosecution's case.
Id. at 421.
¶ 32. In Brent, we addressed a situation where a trial judge, the same judge presiding over McCain's case, actively assumed a role in establishing the validity of a search warrant that he had signed when he was a county court judge. 929 So.2d at 955-56 (¶¶ 4-8). There, the trial judge erred in not recusing himself because he was reviewing whether he had properly signed a search warrant in his previous role as county court judge, and had previously prosecuted Brent. Id. The current situation is a far cry from the impropriety of the situation we addressed in Brent and the questioning that took place in West where improper conduct was extensive and took place in the presence of the jury.
¶ 33. A trial judge may interrogate a witness. M.R.E. 614(b). Reversal is warranted where "the trial judge displays partiality, becomes an advocate, or, in any significant way, conveys to the jury the impression that he has sided with the prosecution." Gleeton v. State, 716 So.2d 1083, 1090(¶ 24) (Miss.1998) (quoting Layne v. State, 542 So.2d 237, 242 (Miss. 1989)).
¶ 34. In the present case, the trial judge did not ask questions in the presence of the jury. The trial judge was not advocating the position of the State and did not display partiality by asking a question to ensure that a photo would assist Dr. Hayne in describing the wounds Willis received. We interpret the statement of the trial judge to the prosecution to "play it safe" as communicating that there would be a more appropriate time to discuss whether a particular photo should be entered into evidence. This statement does not demonstrate a display of partiality as the trial judge merely communicated to the prosecution that the present moment was not the best or appropriate time to entertain the issue of whether the photo marked as Exhibit # 2 should be admitted into evidence. The exchange took place outside the presence of the jury. The defense did not indicate its current concern of coaching at the time of the incident, at any time during the trial, or in the post-trial motion. The prosecution had already submitted the photo for admission into evidence. The record does not demonstrate that the trial judge tried to sua sponte seek to enter the photo into evidence. The issue is without merit.
¶ 35. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO HINDS COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR.