# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00469-COA

**JUSTIN MILLER BRADSHAW** <span style="float:right">**APPELLANT**</span>

**v.**

**STATE OF MISSISSIPPI** <span style="float:right">**APPELLEE**</span>

| | |
|---|---|
| DATE OF JUDGMENT: | 02/15/2022 |
| TRIAL JUDGE: | HON. STEVE S. RATCLIFF III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER |
| | BY: GEORGE T. HOLMES |
| | ARTHUR HUGO CALDERON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DANIELLE LOVE BURKS |
| DISTRICT ATTORNEY: | JOHN K. BRAMLETT JR. |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/26/2023 |
| MOTION FOR REHEARING FILED: | |

**BEFORE BARNES, C.J., WESTBROOKS AND McDONALD, JJ.**

**McDONALD, J., FOR THE COURT:**

¶1. Justin Bradshaw appeals his felony conviction of one count of sexual battery in violation of Mississippi Code Annotated section 97-3-95(1)(d) (Rev. 2014).[1] The Madison

---

[1] Mississippi Code Annotated section 97-3-95 states:

"(1) A person is guilty of sexual battery if he or she engages in sexual penetration with:
    (a) Another person without his or her consent;
    (b) A mentally defective, mentally incapacitated or physically helpless person;
    (c) A child at least fourteen (14) but under sixteen (16) years of age, if the person is thirty-six (36) or more months older than the child; or

County Circuit Court sentenced Bradshaw to serve forty years in the custody of the Mississippi Department of Corrections and to register as a sex offender. On appeal, Bradshaw argues that the indictment charging him was overly broad, that his right to a speedy trial was violated, and that the circuit court abused its discretion by admitting evidence of prior bad acts. We do not find any of these arguments convincing and affirm the jury's verdict and the court's sentence.

## FACTS AND PROCEDURAL HISTORY

¶2.     Bradshaw married Caitlin in July 2012 when M.E.B.,[2] Caitlin's daughter from a previous relationship, was two years old. Bradshaw and Caitlin testified that Bradshaw "informally adopted" M.E.B. by writing his name on her birth certificate after marrying Caitlin, though he never went through a formal adoption process.[3] Between 2012 and 2017, the family lived in Brandon, Mississippi. In 2018, the family moved to Gluckstadt in Madison County, Mississippi. Caitlin and Bradshaw had two more children during the marriage.

---

(d) A child under the age of fourteen (14) years of age, if the person is twenty-four (24) or more months older than the child.
(2) A person is guilty of sexual battery if he or she engages in sexual penetration with a child under the age of eighteen (18) years if the person is in a position of trust or authority over the child including without limitation the child's teacher, counselor, physician, psychiatrist, psychologist, minister, priest, physical therapist, chiropractor, legal guardian, parent, stepparent, aunt, uncle, scout leader or coach.

[2] In the interest of privacy, we use initials for the minor victim.

[3] It is unclear from the record to what extent Bradshaw was considered M.E.B.'s legal guardian, but the State, the defense, and the circuit court all referred to him as M.E.B.'s adoptive father, so that is the language this Court will use.

¶3.    Caitlin worked and attended school, often being gone from the home between 8 a.m. and 8 p.m. during the weekdays and between 8 a.m. and 1 p.m. during the weekends. Bradshaw, a police officer, usually finished work and arrived home at 2 p.m. and would be available when M.E.B. and one of her siblings returned home from school at 2:30 p.m. Caitlin would often call Bradshaw when she was on her way home to remind him to pick up their youngest child from daycare.

¶4.    On March 10, 2021, while Bradshaw was not home, M.E.B. (then eleven years old) informed Caitlin that Bradshaw had been molesting her for a long time. Caitlin confronted Bradshaw when he returned home, and Bradshaw questioned the allegations. Caitlin then took M.E.B. and the other two children to Caitlin's mother's house. There, M.E.B. told Caitlin that the most recent act of abuse occurred three days prior on March 7, 2021. M.E.B. also described to Caitlin several acts of penetration, as well as times when Bradshaw had forced M.E.B. to perform sexual acts on him.

¶5.    On the night of March 10, 2021, Caitlin went to the Madison County Sheriff's Department and gave a witness statement. On March 21, 2021, Latosha Christmas of the Mississippi Child Advocacy Center interviewed M.E.B. concerning the abuse. On March 26, 2021, the local police arrested Bradshaw and charged him with sexual battery. On the night before he was indicted, Bradshaw sent multiple text messages to Caitlin, apologizing for everything, asking her to drop the accusations, and stating that "I've done way worse."

¶6.    On August 17, 2021, Bradshaw was indicted. The indictment read:

On, about, and between the dates of July 1, 2017 and March 10, 2021, in the county [of Madison] and within the jurisdiction of this Court, the said

3

> Defendant, a human being over age eighteen years, whose date is June 26, 1986, did unlawfully, willfully, and feloniously engage in sexual penetration with M.E.B., a child under age fourteen years, whose date of birth is February 19, 2010, and the said Defendant being twenty-four or more months older than the said M.E.B., in violation of Miss. Code Ann. § 97-3-95(1)(d), and being against the peace and dignity of the State of Mississippi.

Prior to trial, the State provided Bradshaw with witness statements and other information it had. The State also notified Bradshaw of its intent to present testimony from M.E.B. about acts that occurred prior to July 1, 2017. At a pre-trial hearing, the court ruled that it would consider objections as the testimony was presented at trial. On December 13, 2021, the trial began.

¶7. During the trial, the State called Caitlin to testify. Caitlin testified that on March 10, 2021, after arriving at M.E.B.'s grandmother's home, she asked M.E.B. for details of the abuse. Caitlin said that at the time, M.E.B. described Bradshaw "putting his 'stick' in her mouth and moving her head back and forth and making her gag." Caitlin also testified that M.E.B. told her that Bradshaw inserted his finger in her rectum. Caitlin further corroborated details of the molestation that M.E.B. would later testify about, like the fact that Bradshaw was uncircumcised and that M.E.B. described the difference between Bradshaw's genitalia and her younger brother's.

¶8. The State also called Christmas to testify regarding the forensic interview she conducted on M.E.B. Christmas stated that during the forensic interview, M.E.B. described multiple instances of cunnilingus performed by Bradshaw and multiple attempts to have M.E.B. perform fellatio on him. M.E.B. also told Christmas about multiple times Bradshaw forced her to masturbate him as well as other indecent acts, including watching pornographic

4

videos, using sex toys, detailing Bradshaw's ejaculate (including what it looked and smelled like), and making M.E.B. "go up and down on his private part with her private part." Taking all these details into account, Christmas stated that these descriptions were consistent with a child who had experienced sexual abuse.

¶9. During trial, the State also called M.E.B. to testify. She testified that the first act of molestation occurred when she was seven years old on the Memorial Day weekend in 2017 in Biloxi, Mississippi, while the family was on vacation. She stated that Bradshaw touched her inappropriately, put his mouth on her vagina, and tried to force her to perform fellatio on him. M.E.B., while describing these acts, did not clearly state whether penetration occurred. M.E.B. then described acts that occurred at her grandparent's house in Rankin County approximately one year after the Biloxi trip when M.E.B. was eight years old. M.E.B. stated that Bradshaw fondled her chest and vagina and attempted to force her to perform fellatio on him but was unsuccessful.

¶10. M.E.B. then recounted how, after moving to Madison County two years later when M.E.B. was nine or ten years old, the acts of molestation occurred roughly three times a week (on Mondays, Wednesdays, and Fridays) after school when she and her younger siblings were alone with Bradshaw, and Caitlin was either at work or at school.[4] During the first abusive instance in Madison County, Bradshaw had M.E.B. sit on the couch and had her masturbate him. He then moved her to his bedroom, where he put his mouth on her vagina and again attempted to force her to perform fellatio on him, though M.E.B. refused. M.E.B.

---

[4] M.E.B. testified that she had horseback riding and tennis lessons on Tuesdays and Thursdays, and that was how she remembered the days when the abuse took place.

failed to describe any specific act of penetration during this first instance of abuse at the Madison County house. While recounting the incidents of abuse, M.E.B. primarily referenced her age or the location where the abuse occurred to establish the date of the incidents.

¶11. When pressed for details to determine if any penetration occurred, M.E.B. stated that Bradshaw's tongue would only "hit the outside" of her vagina. She testified that while in Madison County, Bradshaw put his penis in her mouth in 2019. She described the feeling in detail, consistent with the testimony she had provided to Latosha Christmas during the forensic interview. She also testified that he put his penis in her mouth five times in total at the Madison house. M.E.B. later testified that Bradshaw had put his tongue in her vagina twice. M.E.B. denied that Bradshaw had ever put his fingers in her vagina, but said that he did put his fingers in her rectum once when she was nine or ten years old. M.E.B. further testified about Bradshaw's use of a "minty paste" on her vagina and forced her to watch pornographic videos. M.E.B. also testified that Bradshaw used a vibrator on the outside of her vagina, and Bradshaw attempted to put his penis in her vagina but stopped when she told him it was painful.

¶12. At the close of the State's case, Bradshaw moved for a directed verdict on the ground that the evidence presented by the State only presented evidence of oral penetration and not digital penetration.[5] Further, Bradshaw argued that the indictment only covered sexual

---

[5] The defense conceded that the difference between oral and digital penetration did not matter according to the statute, but Bradshaw still moved for a directed verdict on that ground.

battery that occurred between July 1, 2017, and March 10, 2021, but the State put on evidence of bad acts that allegedly occurred outside the window of the indictment, that is, prior to July 1, 2017. The State pointed out that M.E.B. had testified about instances occurring between July 1, 2017, and March 10, 2021, and that these instances occurred in Madison County. Further, the State pointed out that the definition of penetration in the Mississippi Code does not differentiate between oral and digital penetration for the purpose of determining if a sexual battery occurred. Taking the evidence in the light most favorable to the State (the non-moving party), the court denied the motion for a directed verdict. Later, at the close of the defense's evidence, Bradshaw renewed his motion for a directed verdict on the same ground. The Court denied the motion for the same reasons.

¶13. Bradshaw testified in his defense, saying that he had a drinking problem but that he never sexually abused M.E.B. He believed she was angry with him and that she made up the allegations because "[s]he didn't want me in her life anymore." Bradshaw believed M.E.B.'s biological father's entering her life, her recent interactions at school regarding sex education, and the fact that Bradshaw was the disciplinarian of the family were all contributing factors as to why M.E.B. would have fabricated the allegations of sexual battery.

¶14. After deliberations, the jury found Bradshaw guilty of sexual battery, and the court sentenced him to serve forty years in custody. After the trial, Bradshaw moved for a new trial on the grounds that the verdict was contrary to the law and the weight of the evidence. The court denied this motion on May 9, 2022. Bradshaw then appealed, in forma pauperis, on May 10, 2022. On appeal, Bradshaw raises three issues: (1) the single-count indictment

7

failed to provide him the requisite notice of the charge against him when it covered a four-year timeframe; (2) the defendant's fundamental right to a speedy trial was violated; and (3) the trial court abused its discretion when it admitted evidence of prior bad acts.

## STANDARD OF REVIEW

¶15.   On the first issue, the sufficiency of indictments are questions of law, which are reviewed de novo. *Brady v. State*, 337 So. 3d 218, 233 (¶10) (Miss. 2022).  An indictment acts as a means of informing the criminal defendant "with some measure of certainty as to the nature of the charges brought against him so that he may have a reasonable opportunity to prepare an effective defense . . . ." *Baker v. State*, 930 So 2d 399, 404 (¶8) (Miss. Ct. App. 2005) (citing *Moses v. State*, 795 So. 2d 569, 571 (¶13) (Miss. Ct. App. 2001)).

¶16.   On the second issue, regarding the defendant's fundamental right to a speedy trial, we apply a plain error standard because Bradshaw did not raise this issue before, during, or after trial. *Morgan v. State*, 793 So. 2d 615, 617 (¶6) (Miss. 2001) ("A defendant who fails to make a contemporaneous objection must rely on plain error to raise the assignment on appeal.").

¶17.   This Court reviews the third issue regarding the admission of prior bad acts evidence for abuse of discretion. *Collins v. State*, 172 So. 3d 724, 738-39 (¶14) (Miss. 2015).

## DISCUSSION

### I.   Whether the indictment was overly broad.

¶18.   Bradshaw argues that the indictment's timeframe was overly broad, and as such it failed to provide him with sufficient notice of the specific acts for which he was being

prosecuted. Bradshaw states that the indictment's timeframe was unreasonable because the court did not consider whether the defendant had adequate notice of the charges against him so that he was able to prepare his defense and not be surprised at trial. This argument fails for the following reasons.

### A.    Waiver

¶19.    Although Bradshaw objected during the trial to testimony concerning certain events that would be introduced that fell outside the indictment's timeframe (namely the Biloxi abuse) as prior bad acts, Bradshaw never objected to the allegedly insufficiency of the indictment. Bradshaw also failed to raise this issue in his motion for a new trial, in which he only stated that "[t]he verdict of the jury is contrary to the law and the weight of the evidence." Nonetheless, on appeal Bradshaw argues that the defective indictment constituted plain error.

¶20.    Mississippi law recognizes at least two types of "jurisdictional defects" in indictments that may be raised for the first time on appeal: where the "indictment fails to charge a necessary element of a crime or if there exists no subject matter jurisdiction." *Maggett v. State*, 230 So. 3d 722, 728 (¶16) (Miss. Ct. App. 2016).[6] For non-jurisdictional defects, the defendant must show cause and actual prejudice. *Id*.

¶21.    In this case, there was no jurisdictional defect with Bradshaw's indictment. This was a criminal matter that was tried in the Circuit Court of Madison County where the charged

---

[6] For example, in *Crawford v. State*, 716 So. 2d 1028 (Miss. 1998), *superseded on other grounds by* MRE 702, the Mississippi Supreme Court found that a language-placement issue with the indictment was considered a non-jurisdictional defect. *Id*. at 1050-51 (¶¶81-82).

crime occurred, giving the court subject matter jurisdiction. In addition, the indictment charged all the necessary elements of the crime of sexual battery. Mississippi Code Annotated section 97-3-95 lists the elements of the sexual battery of a minor under the age of fourteen as the (1) sexual penetration (2) of a child under the age of fourteen years of age by (3) a person who is twenty-four or more months older than the child. The indictment in Bradshaw's case stated:

> "On, about, and between the dates of July 1, 2017 and March 10, 2021, in the county aforesaid and within the jurisdiction of this Court, the said Defendant, a human being over age eighteen years, whose date of birth is June 26, 1986, did unlawfully, willfully, and feloniously engage in *sexual penetration* with M.E.B., *a child under age fourteen years*, whose date of birth is February 19, 2010, and the said *Defendant being twenty-four or more months older than the said M.E.B.*, in violation of Miss. Code Ann. § 97-3-95(1)(d), and being against the peace and dignity of the State of Mississippi."

(Emphasis added). This indictment establishes each of the required elements of the statute. Further, it should be noted that in regard to sexual battery cases "the date 'of the offense is not an essential element of the offense charged in the indictment.'" *Faulkner v. State*, 109 So. 3d 142, 149 (¶28) (Miss. Ct. App. 2013) (quoting *Daniels v. State*, 742 So. 2d 1140, 1143 (¶10) (Miss. 1999), *overruled on other grounds by Wilson v. State*, 194 So. 3d 855, 874 (¶60) (Miss. 2016)); *see also Ross v. State*, 288 So. 3d 317, 323 (¶21) (Miss. 2020). Because the indictment clearly listed all the necessary elements of the charged offense, and the date of the offense is not an essential element of the offense of sexual battery under Mississippi caselaw, Bradshaw's alleged defect in the indictment is not jurisdictional. *Maggett*, 230 So. 3d at 728 (¶16).

¶22. Because the span of time in the indictment is supposedly overbroad, Bradshaw must

show cause and actual prejudice based on the indictment being overly broad. *Id*. Bradshaw offers no such proof of cause and actual prejudice. Indeed, Bradshaw fails to address the non-jurisdictional nature of the alleged defect in his brief at all. Based on this, we need not address the non-jurisdictional alleged defect in the indictment raised for the first time on appeal, and it is considered waived.

## B.     Failure on the Merits

¶23.    Notwithstanding the failure to raise the issue to the trial court, Bradshaw's argument fails on the merits. As stated above, our review for the insufficiency of indictments is de novo. *Brady*, 337 So. 3d at 223 (¶10). Mississippi Rule of Criminal Procedure 14.1(a)(1) states that an indictment "shall be a plain, concise and definite written statement of the essential facts and elements constituting the offense charged and shall fully notify the defendant of the nature and cause of the accusation." *Brady*, 337 So. 3d at 224 (¶11) (quoting MRCrP 14.1(a)(1)). Where an indictment cannot be said to grant "some measure of certainty" regarding the nature of the charges brought, it may be deemed insufficient. *Baker*, 930 So. 2d at 405 (¶8). However, "a specific date in a child sexual abuse case is not required so long as the defendant is fully and fairly advised of the charge against him." *Anderson v. State*, 293 So. 3d 279, 289 (¶27) (Miss. Ct. App. 2019) (quoting *Jenkins v. State*, 131 So. 3d 544, 549 (¶14) (Miss. 2013)); *see also Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995).

¶24.    An indictment that states a general timeframe for sexual abuse is sufficient in cases of sexual battery of a minor. In *Baker*, the defendant was indicted for sexual battery over a

one-and-a-half to two-and-a-half-year timeframe. *Baker*, 930 So. 2d at 403 (¶4). The indictment specifically stated the abuse occurred "on or about from 2000 thru [sic] June 22, 2002." In *Baker*, we found the indictment was sufficient to apprise Baker of the crimes with which he was charged. *Id*. Specifically, this Court looked at Uniform Rule of Circuit and County Court Practice 7.06(5), in effect at the time, which provided that the indictment shall include the "date, and if applicable, the time at which the offense was alleged to have been committed . . . ."[7] The "[f]ailure to state the correct date shall not render the indictment insufficient." We further pointed to *Eakes v. State*, 665 So. 2d 852 (Miss. 1995), where the Mississippi Supreme Court held that "a specific date in a child sexual abuse case is not required so long as the defendant is 'fully and fairly advised of the charge against him.'" *Anderson*, 293 So. 3d at 289 (¶27); *see also Baker*, 930 So. 2d at 405-06 (¶12) (quoting *Eakes*, 665 So. 2d at 860).

¶25. The indictment in *Baker* was based on the defendant's own confessions, which established two instances of sexual battery. *Baker*, 930 So. 2d at 406 (¶13). However, these instances conflicted with the dates of the victim. *Id*. Based on this, the indictment was crafted to take into account the entire time that Baker had taken care of the victim. *Id*. at 407

---

[7] The current requirements for the contents of indictments are in Mississippi Rule of Criminal Procedure 14.1, which states, "An indictment shall include the following: . . . the date and, if applicable, the time at which the offense was alleged to have been committed." However, since this change in the rules, the Mississippi Supreme Court has stated in another sexual battery case, that "an allegation as to the time of the offense is not an essential element of the offense charged in the indictment." *Ross*, 288 So. 3d at 322 (¶17) (quoting *Chapman v. State*, 250 So. 3d 429, 450 (¶128) (Miss. 2018)). Accordingly, it is clear that the requirement for the specific date and time of the offense is not required for sexual battery charges.

(¶15).[8]  *Baker* is applicable to the case at hand.  The State in the present case based the indictment on M.E.B.'s forensic interview testimony in which she could not specify dates or times but rather windows of time based on her age or where she lived.  Just as Baker took care of the victim during the span of time charged in his indictment, here Bradshaw watched M.E.B. every Monday, Wednesday, and Friday after school during the period in which the indictment charged him with sexual battery.  M.E.B. testified that on those days, in that timeframe, Bradshaw sexually battered her.  While there was no testimony from either Bradshaw or M.E.B. establishing a specific date or time in which the abuse occurred, this was not necessary.  Just as in *Baker*, because M.E.B.'s testimony did not specify any particular dates, it was legally sufficient for the indictment to span a period of time from the first instance of abuse to the most recent abuse at the Madison house.  Just as this court held in *Baker* "[s]o long as from a fair reading of the indictment, taken as a whole, the nature and cause of the charge against the accused are clear, the indictment is legally sufficient." *Baker*, 930 So. 2d at 406 (¶13) (relying on *Richmond v. State*, 751 So. 2d 1038, 1046 (¶19) (Miss. 1999)).

¶26.    The indictment charged Bradshaw with a specific offense within a three-and-a-half-year timeframe.  It was crafted specifically to fit with the victim's testimony available at the time of the indictment, and no testimony or evidence came to light before the trial that could have narrowed the timeframe any more than it was.  In *Shoemaker v. State*, 256 So. 3d 604,

---

[8]  Based on *Richmond v. State*, 751 S0. 2d 1038, 1046 (¶19) (Miss. 1999), this Court found that indictment, taken as a whole, informed the defendant of the nature and cause of the charge against him and, as such, was legally sufficient. *Baker*, 930 So. 2d at 406 (¶13).

13

612 (¶¶28-29) (Miss. Ct. App. 2018), we found that the State could not provide a more definite time frame for the alleged offenses than it already had in the indictment. The victim in that case testified to sexual abuse that occurred over a five to seven-year time span when she was between five and twelve years old. *Id.* at (¶28). In that case, we pointed out that the defendant and victim had constant interaction with each other over the span of the indicted time. *Id.* at (¶29). Based on those facts, we found that the State could not narrow the date range provided in Shoemaker's indictment any more than it had. *Id.* In the current case, the State was as specific as possible in stating the details of the specific offense given the evidence available at that time. The indictment was not overly broad.

¶27.    Bradshaw argues that this case is similar to the facts of *Moses v. State*, 795 So. 2d 569 (Miss. Ct. App. 2001), where we held that the indictment was held to be overly broad. In *Moses*, Walter Moses was charged in a single indictment to twenty-two counts of sexual activity with two minors. *Id.* at 570 (¶1). Thirteen of the counts applied to the first minor victim, and the remaining counts applied to the second minor victim. *Id.* All the counts were alleged to have occurred between 1994 and 1997. *Id.* at 570 (¶4). Although the State did narrow the dates of counts fifteen through twenty-two prior to trial, it failed to amend the indictment to account for the new, more narrow charges. *Id.* at 571 (¶9). On appeal, this Court found Moses's indictment failed for two reasons: (1) although the timeframe was narrowed, the indictment was never amended; and (2) the separate, but identical, counts in the indictment did not serve to notify the defendant of the distinct acts for which he was being charged. *Id.* at (¶12). Neither of these failures were present in Bradshaw's indictment.

¶28. Bradshaw's indictment included one count of sexual battery of a minor, occurring between July 1, 2017, and March 10, 2021. After a thorough review of the record, it is clear that the State did not have any evidence which could have further narrowed the timeframe of the indictment. M.E.B. was of tender years when the abuse started. She knew the days of the week when the abuse occurred but not any particular dates. Indeed, *Moses* specifically stated:

> [T]he Mississippi Supreme Court has relaxed [the provision requiring the date of the offense in the indictment] to some extent in cases involving sexual abuse of children. The court has done so in recognition of the fact that, due to a child's inherent lack of awareness of dates and the secretive circumstances under which such offenses normally occur, it is often difficult to pinpoint the exact time of the offense.

*Id*. at 572 (¶15) (citing *Eakes*, 665 So. 2d at 860). The most specific time frames M.E.B. could provide were the first instance of abuse at the Biloxi hotel and the most recent instance of abuse at the Madison house. When dealing with a sexual abuse case involving a minor child, the exact date of the offense need not be specified. *Id*.

¶29. The case before us deals with prolonged abuse of a child by someone who was close to the child and had ready access to her at the home, as did the defendant in *Baker*. It is distinguishable from those cases where a child is abused once or even multiple times over the course of years on a sporadic basis, like in *Moses*. When a child is sexually abused on random occasions, the State may be able to provide a narrower timeframe due to the nature of the events. But in cases where the child is repeatedly subjected to abuse on a regular basis over a period of time in the victim's own home, the child may not recall the specific dates of abuse. In the present case, because M.E.B. lived with Bradshaw over a significant period

15

of time, *Moses* is distinguished. For this reason, and due to the nature of the case and the inability of the State to further narrow the timeframe listed in the indictment, we find that the indictment in this case clearly apprised Bradshaw of the nature and cause of the charge against him.

## II. Whether Bradshaw's right to a speedy trial was violated.

¶30. Bradshaw argues for the first time on appeal that his constitutional right to a speedy trial was violated.[9] Bradshaw's alleged speedy-trial violation shall only be enough to overturn his conviction if it amounts to "a miscarriage of justice[.]" *Johnson v. State*, 9 So. 3d 413, 416 (¶8) (Miss. Ct. App. 2008). A court should use four factors to determine if a speedy-trial violation occurred: (1) the length of the delay; (2) the reason(s) for the delay; (3) whether the defendant asserted their right to a speedy trial; and (4) whether the defendant suffered prejudice from the delay. *Manix v. State*, 895 So. 2d 167, 175-76 (¶16) (Miss. 2005) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). As later established in *Bateman v. State*, 125 So. 3d 616, 628-29 (¶40) (Miss. 2013), we must consider the totality of the circumstances in determining whether a speedy-trial violation occurred.

¶31. Normally, in determining whether a speedy-trial violation occurred, the burden is on the State to show good cause for the delay. *Harris v. State*, 311 So. 3d 638, 664-65 (¶79) (Miss. Ct. App. 2020). However, in cases where the trial court never held a hearing on the

---

[9] "Issues raised for the first time on appeal and not contemporaneously objected to at trial are waived." *McCain v. State*, 971 So. 2d 608, 612 (¶7) (Miss. Ct. App. 2007). "However, a violation of a constitutional right 'may reach such serious dimension' that it will be addressed when raised for the first time on appeal." *Id*. (*quoting Whigham v. State*, 611 So. 2d 988, 995 (Miss. 1992), *abrogated on other grounds by Wright v. State*, 958 So. 2d 158, 166 (¶21) (Miss. 2007)).

16

matter, our supreme court has stated:

> [T]his Court has two options: (1) decide the case based on a *de novo* review of the record before us, if good cause for the delay is apparent, or (2) remand the case to the circuit court to allow the State to present evidence explaining the delay and to conduct a proper *Barker* analysis.

*Rowsey v. State*, 188 So. 3d 486, 494 (¶20) (Miss. 2015) (citing *Myers v. State*, 145 So. 3d 1143, 1151-52 (Miss. 2014)). In the present case, Bradshaw did not assert his speedy-trial claim to the trial court and, instead, raises it for the first time on appeal. Thus, no hearing was held, and the State was unable to provide a reason for the delay to the trial court. However, we find good cause for the delay is apparent from our de novo review of the record, and, therefore, need not remand for an evidentiary hearing.

### A.     Length of the Delay

¶32.    The Mississippi Supreme Court has held that a delay of eight months or longer triggers the rest of the *Barker* analysis. *Smith v. State*, 550 So. 2d 406, 408 (Miss. 1989). This delay does not support a finding of actual prejudice but simply acts as a triggering mechanism for the rest of the *Barker* analysis. *Barker*, 407 U.S. at 530. The length of the delay is calculated from the date of the arrest or date of the indictment, whichever comes first. *Johnson v. State*, 296 So. 3d 198, 202 (¶9) (Miss. Ct. App. 2020) ("A formal indictment or information or an arrest—whichever first occurs—triggers the constitutional right to a speedy trial."). Between Bradshaw's arrest and his trial, eight months and seventeen days elapsed.[10] This meets the requirements to trigger a full *Barker* analysis.

### B.     Reason for the Delay

---

[10] Bradshaw was arrested on March 26, 2021, and his trial began December 13, 2021.

¶33. Once indicted, the court expeditiously set the matter for trial. Bradshaw was indicted on August 17, 2021, and trial was set for December 6, 2021. Were the indictment date the beginning date for a *Barker* analysis, Bradshaw would have no speedy trial claim. It is the time between his arrest and his indictment that caused the eight month threshold laid out in *Barker* to be exceeded. However, as this Court reiterated in *Harris*, 311 So. 3d at 665 (¶80):

> [I]t requires no extended argument to establish that prosecutors do not deviate from "fundamental conceptions of justice" when they defer seeking indictments until they have probable cause to believe an accused is guilty; indeed it is unprofessional conduct for a prosecutor to recommend an indictment on less than probable cause. It should be equally obvious that prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt.

(Citing *State v. Woodall*, 801 So. 2d 678, 682 (¶15) (Miss. 2001) (quoting *United States v. Lovasco*, 431 U.S. 783, 790-91 (1977))). Such delays between a finding of probable cause and an indictment are considered "investigative delays," as they are the result of law enforcement gathering evidence to support the indictment. *Lovasco*, 431 U.S. at 795. "[I]nvestigative delay is fundamentally unlike delay undertaken by the [g]overnment solely to gain tactical advantage over the accused." *Id*. Different reasons for delay are assigned different weight. *Williams v. State*, 305 So. 3d 1122, 1132 (¶31) (Miss. 2020). While more nefarious reasons may weigh heavily against the State, more neutral reasons for delay may weigh only slightly against the State. *Id*. Since investigative delays are considered more neutral reasons for delay, *Lovasco*, 431 U.S. at 795, they should be weighed only slightly against the State. *Williams*, 305 So. 3d at 1132 (¶31).

¶34. Bradshaw's right to a speedy trial attached when he was arrested on March 26, 2021.

18

*McBride v. State*, 61 So. 3d 138, 142 (¶8) (Miss. 2011). Bradshaw was not indicted until August 17, 2021. The court then entered an order setting trial for December 6, 2021, to which both Bradshaw and his attorney agreed. Trial was actually held on December 13, 2021. Thus, Bradshaw's trial was set less than five months after his indictment. As previously noted, it is clear from the record that, but for the delay between the arrest and the indictment, we would not need to launch a full *Barker* analysis, as the eight month threshold would not have been met. Since we only have to conduct this full analysis due to a delay between the arrest and indictment, this delay is considered an "investigative delay." *Harris*, 311 So. 3d at 665 (¶80). Investigative delays still fall upon the government, as it does in this case, but are a more neutral reason for delay. *Johnson v. State*, 68 So. 3d 1239, 1242 (¶9) (Miss. 2011) ("[T]he ultimate responsibility for such circumstances must rest with the government.").

### C. Assertion of the Right

¶35. A defendant does not waive his constitutional right to a speedy trial by failing to assert it to the trial court. In *Rowsey v. State*, 188 So. 3d 486, 494 (¶21) (Miss. 2015), the Mississippi Supreme Court discussed *Barker*, stating:

> '[W]e reject . . . the rule that a defendant who fails to demand a speedy trial
> forever waives his right.' . . . '[T]he better rule is that the defendant's assertion
> of or failure to assert his right to a speedy trial is one of the factors to be
> considered in an inquiry into the deprivation of the right.' *Id*.

Further, when a defendant makes motions for continuances, whether successful or not, it undermines the argument asserted by the defendant that he was disadvantaged by the delay. *Jasso v. State*, 655 So. 2d 30, 34 (Miss. 1995). Bradshaw failed to assert his right to a speedy

19

trial until this appeal. Further, he moved for a continuance prior to trial, but the court denied the motion. The failure to assert the right to a speedy trial, while also having moved for a continuance prior to trial, weighs against the argument that a speedy-trial violation occurred. *Perry v. State*, 637 So. 2d 871, 875 (Miss. 1994). As such, this factor weighs heavily against Bradshaw.

### D. Prejudice to the Defendant

¶36. As set out in *Courtney v. State*, 275 So. 3d 1032, 1043-44 (¶34) (Miss. 2019), "[t]o determine whether a defendant was prejudiced by the delay, the Court considers: (1) preventing oppressive pretrial incarceration; (2) minimizing anxiety and concern of the accused; and (3) limiting the possibility that the defense will be impaired." Of these factors, the most important one is whether the defense was impaired. *Id*. To prove such impairment or prejudice, the defendant must show "loss of evidence, death of witnesses, or staleness of an investigation." *Sharp v. State*, 786 So. 2d 372, 381 (¶19) (Miss. 2001).

¶37. As to the first factor, Bradshaw was released from incarceration pending his trial, so his incarceration did not prejudice his defense. Regarding the second factor, Bradshaw does not argue any anxiety or concern regarding the trial. Thus, the only factor Bradshaw claims is that the delay impaired his defense because the minor victim had difficulty remembering the details of the abuse.

¶38. Bradshaw points out that M.E.B. had difficulty remembering some details of events that occurred three to four years earlier, such as whether they were in a hotel or a house in Biloxi when the first instance of molestation occurred. But M.E.B. was seven years old at

20

the time. This Court is not convinced that the additional time between arrest and trial skewed the memory of the victim so heavily as to create prejudice for the defendant, especially when she was recounting an event that occurred four years earlier. It is well established that minor victims of sexual abuse are given leniency in describing and recalling the exact time and place the abuse occurred. *Jenkins*, 131 So. 3d at 549-50 (¶16). As such, M.E.B.'s inability to specifically describe the events that took place over a four-year time frame are not presumed to be caused by a delay. The victim specifically testified about what happened to her over a four-year period. The fact that M.E.B. could not recall specific dates of abuse was not caused by the delay in trial. Because Bradshaw has failed to show any other evidence of prejudice, this factor weighs against him.

¶39. It is clear that despite the presumption of a speedy-trial violation, the *Barker* factors weigh heavily against Bradshaw's claim that such a violation actually occurred. Bradshaw did not raise the alleged speedy-trial violation to the trial court, and in fact he tried to move for a continuance but was denied. Although the State did not provide any reason for the delay, it was during the investigative period of the indictment, and there was no proof that the State delayed the prosecution for the purposes of gaining a tactical advantage. Therefore, this factor only slightly weighed in Bradshaw's favor. Lastly, Bradshaw failed to show any evidence that this delay prejudiced him in any way, and as such this last factor weighs against him as well. Based on the foregoing, and considering the totality of the circumstances, we do not find that a speedy-trial violation occurred.

**III. Whether the trial court abused its discretion by admitting evidence of Bradshaw's prior bad acts.**

21

¶40.   Bradshaw contends that the circuit court erred in allowing M.E.B. to testify about his prior bad acts of sexual molestation prior to the date charged in the indictment.  Bradshaw specifically raises the argument that the testimony regarding the Biloxi abuse, which occurred prior to the dates of the indictment, was improperly admitted evidence of prior bad acts.

¶41.   Our Court reviews rulings on the admission of prior bad-acts evidence for abuse of discretion.  *Collins*, 172 So. 3d at 738-39 (¶14).  "[E]vidence of prior sexual acts between the accused and the victim is admissible to show the accused's lustful, lascivious disposition toward the particular victim, especially in circumstances where the victim is under the age of consent."  *Walker v. State*, 878 So. 2d 913, 915 (¶14) (Miss. 2004).  Such evidence is admissible if "properly admitted under Rule 404(b), filtered through Rule 403, and accompanied by an appropriately-drafted limiting or cautionary instruction."  *Derouen v. State*, 994 So. 2d 748, 756 (¶20) (Miss. 2008).  As long as the proper filter, notice, and cautionary instructions are used, prior bad-acts evidence may be presented to a jury in cases of sexual assault of a minor victim.  *Id*.

¶42.   Under Mississippi Rule of Evidence Rule 404(b),[11] "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident[,]" are proper

---

[11] Rule 404(b) provides:

> (1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
> (2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

reasons to present prior-bad-acts evidence to the jury. The court undertakes a Rule 403[12] analysis, and a limiting instruction must be presented to distinguish the prior bad acts. *Smith v. State*, 326 So. 3d 510, 517-18 (¶20) (Miss. Ct. App. 2021). Further, the court must present a limiting instruction to prevent the forbidden inference being drawn that because the defendant may have committed the prior bad acts, he is predisposed to have committed them again in the present case. Based on our review of the record, all these requirements were met.

¶43. In this case, the trial court heard arguments regarding M.E.B.'s testimony on the abuse that occurred at the Biloxi hotel during a pre-trial hearing when it made its determination on whether the tender-years exception applied. *See* MRE 803(25). The State made it clear that the testimony regarding the abuse at the Biloxi hotel was not being presented for the purpose of proving the charged offense but, instead, to establish the beginning of the abuse. Further, the State explained that although M.E.B. would testify regarding acts that occurred outside Madison County (the county listed in the indictment) her testimony about the Biloxi abuse was presented to paint a complete picture, rather than to prove any particular instances of abuse. During the hearing, the court determined that the prior bad acts evidence was more probative than prejudicial because it helped establish when the abuse started and the beginning of the victim's testimony. The trial court also reasoned that "[t]here might be something that comes up that's objectionable. We'll just have to deal with that at trial."

---

[12] Rule 403 of the Mississippi Rules of Evidence states, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

When M.E.B. did testify concerning the Biloxi incident, Bradshaw failed to make any such objections. The court later gave the jury a limiting instruction, agreed to by both Bradshaw and the State.[13] As required by Rule 404(b), this instruction distinguished the Biloxi abuse from the Madison abuse, by telling the jury the Biloxi act was not to be considered in determining whether Bradshaw was likely to act in conformity with the prior bad act.

¶44. Because all the requirements under Rule 404 were met, the court did not abuse its discretion in allowing M.E.B.'s testimony regarding Bradshaw's abuse outside the indictment's timeframe. The defendant was given sufficient notice of the State's intention to present said evidence, the court determined it was more probative than prejudicial, and the jury was instructed regarding the testimony being distinguishable from the substantive acts at issue during the trial. Accordingly, we find the trial court did not abuse its discretion regarding the admission of the prior bad-acts evidence.

## CONCLUSION

¶45. We hold that the indictment was not overly broad, as it stated with sufficient clarity the act of which Bradshaw was being accused. The specific time and place of the abuse was not a necessary element that had to be particularly stated in the indictment. Further,

---

[13] The court gave the following jury instruction regarding the Biloxi abuse, to which neither party objected:

> The Court instructs the jury that acts testified to by [M.E.B.] are acts relating to charges for which the defendant is not presently on trial and are to be considered only for the limited purpose of showing proof of motive, intent, or absence of mistake or accident. You cannot and must not simply infer that the defendant acts in conformity with his previous acts and that he is therefore guilty of the charge for which he is presently on trial.

24

Bradshaw failed to raise the issue of a speedy-trial violation to the circuit court. Notwithstanding, the *Barker* factors weighed against Bradshaw in determining that there was not any prejudice. Lastly, the trial court did not abuse its discretion by allowing the prior bad-acts evidence because the court properly filtered all the testimony and evidence as required by the Mississippi Rules of Evidence and gave the jury the necessary limiting instructions. Finding no error, we affirm the trial court's denial of the motion for a new trial and the judgment of conviction and sentencing.

¶46. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, WESTBROOKS, LAWRENCE, McCARTY AND SMITH, JJ., CONCUR. EMFINGER, J., NOT PARTICIPATING.**